# FLORENCE COLLINS PEGELOW *v.* EDWARD R. JOHNSON

## [No. 51, October Term, 1939.]

346

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Hyman A. Pressman,* with whom was *J. Wilmer Cronin* on the brief, for the appellant.

*Paul F. Due,* with whom were *G. Howlett Cobourn* and *Due & Nickerson* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Harford county, entered upon the verdict of a jury in favor of the appellee (defendant below). The suit was brought by Florence Collins Pegelow to recover damages for personal injuries sustained by her on November 13th, 1938, when a motorcycle on which she was riding collided with appellee's automobile on North Point Road, an arterial highway within the meaning of Code (Supp. 1935), art. 56, sec. 209, at or near its intersection by the Trappe Road, a lateral highway. The only exception

before us pertains to the action of the trial court in its rulings upon the prayers, appellant contending that her No. 1 prayer should have been granted, and that the court erred in granting defendant's third prayer.

The plaintiff's injuries, concededly of a serious nature, were sustained about one o'clock A. M. on November 13th, while riding as a guest or passenger upon a motorcycle driven by one Zensen upon the North Point Road in a northerly direction, the North Point Road being an arterial highway, eighteen to twenty feet in width, and on its west side, where it is intersected by the Trappe Road, a stop sign had been erected by the State Roads Commission. The Trappe Road, or lateral highway, is of approximately equal width, and runs east and west. At the time of the collision the weather was clear and visibility was good. The evidence of the plaintiff and her witnesses was sufficient, if believed, to enable a finding by the jury that the motorcycle on which she was riding was being operated at a speed from thirty to thirty-five miles per hour before it reached the intersection; that plaintiff observed appellee's automobile east-bound on the Trappe Road when it was one and one-half blocks from the intersection, but on arrival thereat, it did not stop, but proceeded upon the boulevard highway when the motorcycle was within fifteen feet of the intersection. Zensen testified that he did not see appellant's automobile until he was quite near the intersection, and the witness, the plaintiff, and Tracy L. Taylor all were positive that appellee did not stop before entering the intersection; that it entered it as the motorcycle approached, so that its driver, after realizing that the car operator was not going to stop before entering the arterial highway, was unable to prevent striking the automobile, although, in an effort to avoid colliding with the automobile, he tried to cut to his left, but came into contact with the car just as it had almost completed the turn in front of him; that the collision occurred at the intersection of the Trappe and North Point Roads and appellee "came right out and made the curve * * * slowed down a little to make the curve * * * and did not stop."

The evidence offered on behalf of appellee differs materially from that of appellant and her witnesses, and is to the effect that, while driving his automobile east on Trappe Road at a speed of twenty-five miles per hour, he approached the arterial highway, but upon arrival at the intersection stopped his car, waited and looked to see if the road was clear, and, seeing nothing nearer the intersection than five hundred feet, drove out upon the boulevard; that as he made the turn his attention was called to the fact that a driver was approaching from his rear, and upon looking he thought he saw an automobile with only one headlight, and continued to make the turn, but when twenty-five feet past the intersection the rear of his car was struck by the motorcycle; that his turn had been more than one-half completed when his attention was first called to what he supposed was a car with one headlight, he was driving slowly and was struck just as he put his car in high gear, and at the time of the accident he was not driving more than fifteen or twenty miles per hour.

Sufficient has been said concerning the evidence offered on behalf of both parties to demonstrate that according to appellant's contention her injuries were occasioned by the failure of appellee to stop and yield the right of way to the motorcycle on which she rode, and which was being driven upon the favored highway, while according to the version of appellee he did stop upon reaching the arterial highway, and did yield the right of way to all approaching traffic; that the favored highway at the time he drove upon it was free from traffic, and he entered and passed through the intersection without incident and was some distance beyond it when his car was struck by the motorcycle. It is not our province to determine which of those versions is correct, for those questions were for the jury to resolve under proper instructions of the court, and undoubtedly the jury's verdict would have depended upon whether they accepted the contention of appellant or appellee as to the circumstances under which the collision occurred.

This brings us to a consideration of the plaintiff's first prayer, which was refused, and defendant's third prayer, which was granted. By the former, appellant sought to have the jury instructed as to the relative rights of drivers of vehicles upon lateral highways as well as upon through or arterial highways. After requiring the jury to find that the North Point Road was an arterial highway and, upon approaching said road while driving his automobile, appellee failed to come to a full stop before entering thereon or crossing the North Point Road, or, having stopped, failed to yield the right of way to the motorcycle upon the favored highway, it concluded as follows: "and if the jury find that the failure of the defendant either to come to a full stop before entering or crossing the said North Point Road or to yield the right of way to the motorcycle upon which the plaintiff was riding caused or contributed to the accident complained of, and that the plaintiff was injured thereby, if the jury so find, then the verdict of the jury must be for the plaintiff." If it be conceded that by the first part of this instruction, the rules of the road applicable to the situation under consideration were correctly stated, the prayer is defective in failing to require the jury to find that appellee's failure to obey the rule with regard to stopping his motor vehicle before entering the boulevard was the proximate cause of the accident, for under it, if they found that such failure "contributed" to the accident the plaintiff would still have been entitled to recover. *Buckey v. White*, 137 Md. 124, 111 A. 777; *Hopper, McGaw & Co. v. Kelly,* 145 Md. 161, 167, 125 A. 779; *Kelly v. Huber Baking Co.,* 145 Md. 321, 334, 125 A. 782; *Greer Transportation Co. v. Knight,* 157 Md. 528, 537, 146 A. 851; *Friedman v. Hendler Creamery Co.,* 158 Md. 131, 142, 148 A. 426; *Chasanow v. Smouse,* 168 Md. 629, 632, 178 A. 846; *Carlin v. Worthington,* 172 Md. 505, 192 A. 356.

The defendant's third prayer, which was granted, reads as follows: "The defendant prays the court to instruct the jury as a matter of law that upon approaching

a crossing of intersecting public highways, and in traversing such crossings, the person operating a motor vehicle or motorcycle shall have the same under control and shall reduce its speed to a reasonable and proper rate; and if the jury find from the evidence that the operator of the motorcycle violated the law in this respect, and that such violation directly contributed to the happening of the accident, and if the jury shall further find that the plaintiff was, or by the exercise of reasonable care could have been, aware of such violation by the operator of the motorcycle in time to have avoided the accident by warning the said operator, and failed to so warn him, then the plaintiff was guilty of contributory negligence and cannot recover in this action."

It is contended by appellee that this prayer was properly granted, and, in support of such contention, we are referred to Code, art. 56, sec. 195, and certain decisions of this court which, like section 195, relate solely to the general rules of the road, and are in no way connected with the later enactment, which appears as section 209, setting up special rules when entering an arterial highway. Since the adoption of section 209, the relative rights of operators of motor vehicles upon boulevards, as well as of those entering boulevards, have been considered by this court in three cases, viz; *Binder v. Monaghan,* 171 Md. 77, 188 A. 31; *Carlin v. Worthington,* 172 Md. 505, 192 A. 356, and *Greenfeld v. Hook,* 177 Md. 166, 8 A. 2nd 888.

In the decision last cited, Judge Offutt, speaking for this court, referred to the two former decisions and showed that there was no conflict between them, because in *Carlin v. Worthington, supra* [172 Md. 505, 192 A. 357], we were considering whether there was error in the refusal of plaintiff's second prayer, which attempted to define the statutory "rule of the road with respect to favored and unfavored highways," and permitted a finding in favor of the plaintiff without submitting to the jury to find that the violation of the rule was the proximate cause of the accident. In the course of his opinion

in *Grenfeld v. Hook, supra,* Judge Offutt quotes from *Carlin v. Worthington* as follows:

" 'It is not negligent for a driver on a primary or favored highway to assume that a driver on a secondary or unfavored highway marked by a stop sign will stop and allow him to proceed. *Keir v. Trager,* 134 Kan. 505, 7 P. 2nd 49; *Dikel v. Mathers,* 213 Iowa 76, 238 N. W. 615; *Lucas v. Andress,* 17 La. App. 329, 136 So. 207. It is the application by statute of the old "stop, look and listen" rule with respect to railways, which is, as stated in *Philadelphia, W. & B. R. Co. v. Hogeland,* 66 Md. 149, 161, 7 A. 107. "It is negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains; and, if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad track should stop, look, and listen before attempting to cross.' "

And Judge Offutt goes on to say: "Indeed the plain and peremptory language of the statute permits no other construction. It says not only that the inhibited traveller must stop before entering a favored highway, but that he must yield the right of way to one travelling thereon. Manifestly one does not yield the right of way if he drives in front of an approaching car and bars its progress, so the statute can only mean that the inhibited traveller must not only stop before entering the favored highway, but that after he has entered it he must exercise reasonable care and diligence to ascertain the approach of traffic thereon, and that after he has discovered or should discover that traffic is approaching he must allow it to proceed."

We construed section 209 of article 56, so far as it applied to the facts of the case, as mandatory, and held it was the imperative duty of one driving a motor vehicle upon an unfavored highway, as he approached an intersecting highway designated as a boulevard, to stop before entering the intersection and, once having stopped, to exercise diligence to discover approaching traffic and,

having entered the intersection, to yield the right of way to such traffic, and that this duty obtained throughout his passage across the favored way.

In that case, *Greenfeld v. Hook,* as in the present case, a prayer had been granted at the request of the plaintiff which instructed the jury that " 'persons travelling upon boulevard or through streets do not have an absolute right of way,' and that it is the duty of persons operating * * * upon such streets to reduce the speed of their automobiles and have the same under reasonable control in approaching street crossings." In considering that instruction, it was said: "There is no such rule, nor any such duty. On the contrary one driving an automobile over such a highway is entitled to assume that persons entering it from an unfavored highway will stop and yield the right of way, (*Carlin v. Worthington, supra*) ; moreover the statement that 'persons traveling' upon such highways do not have an 'absolute' right of way, while sound enough as an abstraction, is exceedingly misleading without some application of it to the facts of the case. The prayer predicates recovery upon the failure of the defendant to 'reduce the speed of his automobile and have the same under reasonable control' at intersections. That statement, while consistent with plaintiff's theory, was inconsistent with the law, and the prayer should have been refused."

It should be observed that at the time the present case was heard below and argued in this court, the decision in *Greenfeld v. Hook, supra,* had not been reported. However, it is not only the most recent case, but the fullest considered case by this court under section 209, article 56, of the Code, nor does it conflict with what was said in *Blinder v. Monaghan* and *Carlin v. Worthington, supra.* In view of those considerations, we must hold that there was error in granting the defendant's third prayer, and, because of this, the judgment appealed from must be reversed and the case remanded for a new trial.

*Judgment reversed, with costs, and case remanded for a new trial.*