## HARPER v. HIGGS ET VIR

[No. 191, September Term, 1960.]

28

*Decided April 5, 1961.*

*Motion for rehearing filed May 4, 1961, denied May 8, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*John W. T. Webb* and *K. King Burnett,* with whom were *Webb & Travers* on the brief, for the appellant.

*James F. FitzGerald,* with whom were *Walter D. Webster* and *FitzGerald & FitzGerald* on the brief, for the appellees, the plaintiffs.

HAMMOND, J., delivered the opinion of the Court.

If Conan Doyle had written this chapter of the Maryland Reports, he might have called it "The Case of the Completely Inattentive Women Drivers." The principal legal question presented is whether the jury should have been allowed to find out for themselves (as they were) a real culprit in the automobile accident case, or whether the judge should have

peeked and told them how the story ended, as a matter of law.

The plaintiffs below were a husband and wife. The wife, Mrs. Higgs, a passenger in a car which entered from a side road and came into crushing contact with a car on the main road, sued the favored driver, Mrs. Harper, who impleaded the driver of the unfavored car, Mrs. Hurry. The case was submitted on issues as to: (1) the primary negligence of Harper; (2) the primary negligence of Hurry; and (3) damages. The court refused to direct a verdict for Harper but instructed the jury to find Hurry negligent. The jury found that Harper also had been negligent and assessed damages at $25,000, which the court reduced to $12,500 because Mr. and Mrs. Higgs had released Hurry in conformity with the Contribution Among Joint Tortfeasors Act. Harper's motion for judgment n. o. v. was denied and she appealed from the final judgment, claiming that a verdict should have been directed in her favor, there was error in the charge to the jury and prejudice in the court's refusal to allow expert testimony as to which car struck the other, and the so-called per diem or mathematical formula argument as to how damages for pain and suffering may be computed which was made to the jury was improper.

Mrs. Hurry was driving Mrs. Higgs, her sister-in-law, and a Mr. Brooks in her 1947 Chevrolet from St. Mary's County to Ocean City. They got lost and found themselves in Wicomico County driving north on the Willard-Powellville Road, Route 354, which crosses Route 50, a boulevard, at Willards. Meanwhile, Mrs. Harper, then a hostess in an Ocean City hotel dining room, was coming west on Route 50, driving her daughter and three waitresses to Salisbury to shop, in her 1951 DeSoto.

A blinker light, suspended directly over the center of the intersection of Routes 50 and 354, flashed yellow for boulevard traffic and red for traffic on Route 354. There were stop signs for Route 354 traffic at the southeast and northwest corners.

Mrs. Hurry's testimony was that as she approached the

intersection "There was a red blinker on me. I stopped. And as I started to pull away I got in about the middle of the highway and my car cut off, and I was trying to start the car. And that is all I remember." She did not see the Harper car "Because I was trying to start my car." She did not know what happened there "other than I stopped and started again."

Mr. Brooks, who was seated next to Mrs. Hurry on the front seat, said from the stand: "There was a stop sign there. Mrs. Hurry stopped her car. And she proceeded to go across the road, and practically got under the blinker light and her motor went dead. And in trying to start this motor, I suppose it was just a few seconds, that on my right this automobile * * * was right on top of us." He thought they were stalled under the traffic light for five seconds or a little longer and that "while she was trying to start this car it eased ahead a little bit." As Mrs. Hurry started across Route 50, after having stopped, Mr. Brooks, beside her on the front seat, looked both ways and "There was nothing coming either way at that time * * * I noticed both ways that there was nothing coming at that particular time that we stopped there at that stop-sign."

One of the passengers in Mrs. Harper's car, who was sitting in the back, testified that Mrs. Harper drove at a constant speed of thirty-five or forty miles an hour and the car's speed did not decrease as they approached the intersection. Before they got there she saw the Hurry car approaching "and it was going at a speed that I didn't think it was going to slow down for the intersection; so, I leaned forward on the seat to warn Mrs. Harper and everyone was talking, and I was waiting to get a sound in * * * when I looked again the car was coming right at us. * * * It hit on our left-hand side between the front and back door." The girls in the car were talking about a beauty parlor a little bit to the east of the intersection because the mother of one of the waitresses they worked with owned it. When the witness leaned forward to warn of the other car, Mrs. Harper was talking to someone. She "waited a second" to get her warning "in." She

did not "really" look to see whether the person Mrs. Harper
was talking to was going to answer because "I was look-
ing to see where the car was at. Because it was worrying
me. I hollered 'the car is not going to stop; it's going to
hit us'. And Mrs. Harper hollered 'Where?' and we hit."

Mrs. Harper said she was driving under fifty miles an
hour and as she approached the blinker light she slowed down
—how much she did not know. She saw the Hurry car "com-
ing through the intersection" and "thought it would stop."
She reiterated several times that when she first saw the other
car "it was moving through," that it was "almost through
the intersection" and that when she first saw it it was in the
intersection but "not right in the middle." She thought "the
other car struck my car in front." She applied her brakes
and did "pull slightly to my right hand."

A State policeman found the point of impact to have been
seven feet north of the center line of Route 50 in the west-
bound lane. The Hurry car travelled 24 feet and the Harper
car 20 feet after the impact. There were no skid marks.

Mrs. Harper's motion for a directed verdict was on the
theory that neither by act nor omission did she violate any
obligation or duty the law imposes on a driver on a boule-
vard. The applicable law and its underlying theory have been
stated and restated may times since *Greenfeld v. Hook,* 177
Md. 116, 125, 130, articulated them elaborately in 1939. A
motorist must stop before he drives onto a boulevard and
yield the right of way to vehicles thereon during their pas-
sage past the intersection. The relative rights of travellers
on the two intersecting roads are not to be held to depend
on nice calculations of speed, time and distance lest the ob-
vious and essential purposes of the boulevard rule to accele-
rate the flow of traffic over the through highway at the per-
mitted speed, without interruption, be frustrated. The favored
driver has a right to assume the unfavored driver will stop
and yield the right of passage and therefore, in most instances,
even though the favored driver does not see the unfavored
car he will not be guilty of negligence proximately causing
the accident for, if he had seen it he could, unless put on
notice to the contrary, have assumed it would stop.

As Judge Henderson for the Court put it in *Belle Isle Cab Co. v. Pruitt*, 187 Md. 174, 180, the favored driver is not relieved of the obligation to use due care under the circumstances "But in determining due care, the assumption that the unfavored driver will stop and yield the right of way is an important factor."

This obligation of the favored driver to use due care under the circumstances also has been stated and restated. In the *Greenfeld* case (in which the doctrine of last clear chance was held applicable in a stop street collision), Judge Offutt, speaking for the Court, said the boulevard law "does not mean that the traveller on the favored highway has an absolute, unqualified, and complete right of way, at all times and under all circumstances, over persons who have lawfully entered the street, nor that he can proceed thereon in blind indifference to the danger to which his progress may expose others. There are many situations in which the driver of an automobile entering a favored from an unfavored highway may without negligence be endangered by traffic over and along the same; * * * a child unexpectedly coming into the highway may cause him to stop or to go on, or some defect in the motor, the brakes, or the steering gear of his automobile may prevent his controlling it * * *. So, where a traveller on a favored highway knows or should know that his progress will endanger a traveller entering the same from a restricted highway, he must exercise reasonable care to avoid injuring him."

In *Shedlock v. Marshall*, 186 Md. 218, 235, the earlier cases were reviewed and the Court said that the driver who enters the boulevard from an unfavored highway must yield the right of way to all the traffic he finds there during the entire time he is there. "If he does not, and a collision results, he is at fault and cannot recover against the other driver unless the doctrine of last clear chance enters the case. * * * He is negligent because he has not yielded the road. Being negligent himself, his action is barred. But when he is made a defendant in an action for damages resulting from the collision, he can always show that the other party was

also guilty of negligence contributing to the accident, and if he succeeds in this, no verdict can be obtained against him. Then both parties are negligent."

Judge Henderson in the *Belle Isle* case, *supra,* at page 179 of 187 Md., made this observation of the *Greenfeld* case: "And in other passages in that opinion the court recognized that the driver on the favored highway does not have an absolute right to proceed under all circumstances. See also the comment on this case in 4 Md. L. R. 207, 213. The recitals in Section 1 of Article 66½ of the Code, as codified, would seem to negative any implication that the statute was designed to change the established law of negligence so as to relieve the favored driver of all duty to use care."

*Sonnenberg v. Monumental Motor Tours,* 198 Md. 227, 234, by Judge Markell, said: "The driver of a taxicab or any other driver is not under a duty to anticipate, *in the absence of evidence,* that other drivers will often—or ever—cross negligently in violation of the boulevard law." (Emphasis supplied.) *Sun Cab Co., Inc. v. Hall,* 199 Md. 461, 467, permitted recovery by a passenger in a favored taxi against the taxi owner because the driver did not see an unfavored car in the intersection in time not to hit it when he would have seen it in time to have stopped if he had been looking. Chief Judge Marbury said for the Court: "Boulevards are posted for the purpose of accelerating traffic, but they are not constituted speedways for reckless drivers who do not watch what is going on. It is true that the driver on a boulevard is not obliged to anticipate that someone will negligently come into his path, but he is not excused from liability to his passengers if someone does come in, and he fails to avoid a collision because he did not look in time to see what was inevitable."

*Fowler v. DeFontes,* 211 Md. 568, 574, reiterated that the favored right of way "is to be enjoyed with due regard to the circumstances then and there existing."

The latest pronouncement was made by Judge Henderson for the Court in *Eastern Contractors, Inc. v. State,* 225 Md. 112 (which equated a road on which the light was green

to a boulevard) as follows: "There may be circumstances, apart from nice calculations of time and distance, under which a favored driver proceeding on a green light may be put upon notice that an unfavored driver will enter unlawfully."

We think the instant case presents one of those rare instances in which the conduct of the favored driver was properly subject to a jury's determination of its reasonableness and prudence under the circumstances. The principles spelled out in *State v. Marvil Package Co.*, 202 Md. 592, 598, *Greenfeld v. Hook* and *Sun Cab Co., Inc. v. Hall*, both *supra*, are controlling. In *Marvil* the intersection was controlled by a blinker light, as in the case before us. Code (1957), Art. 66½, Sec. 196, provides as to blinker lights:

> "Whenever flashing red or amber signals are used they shall require obedience by vehicular traffic as follows:
>
> "(1) *Flashing red (stop signal).*—When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
>
> "(2) *Flashing amber (caution signal).*—When an amber lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution."

Judge Sobeloff for the Court said in *Marvil* that the law in other States is that "a driver on a through street when approaching an intersection controlled by amber and red flashing signals must exercise a caution commensurate with the prudence of a reasonable man." He continued:

> "When the State has erected an amber signal to regulate traffic on a through highway, we think it not unreasonable to find its purpose is to exact from the users of a highway a caution higher than is to be expected in the absence of such a signal. So to

hold does not diminish or render ineffectual the utility of the modern through highway. Nor does it mean that a user of the highway cannot assume that drivers will stop in compliance with stop signs. It means merely that one should not proceed through such an intersection oblivious to it. It does mean, as the statute plainly says, that an amber light is a warning to proceed cautiously, and if the facts show that an accident has occurred due to a failure to take heed of such an admonition, when a collision could have been averted by exercising caution, then liability may be imposed upon the user of the favored artery. While the driver on the main artery may ordinarily rely on the vehicle approaching from his right or left stopping as required by the red light, yet if the circumstances indicate that the approaching vehicle will not stop, then a duty arises on the part of the favored driver to avoid an accident if he can. He cannot proceed in complete disregard of obvious danger."

There was evidence below which, if believed by the jury, would have permitted, without "nice calculations," a finding that the Hurry car stopped at the intersection as the law requires and started across when there was no through traffic to which it was required to yield the right of way, that it traversed some twenty to twenty-five feet from a standing start and stood stalled under the blinker light for an additional five or more seconds before the collision, and that all during this time Mrs. Harper continued to approach at an undiminished speed without observing the road ahead and that when her passenger "hollered" that the Hurry car would hit them, Mrs. Harper did not even know another car was around and had to cry out "where," just as the two cars hit.

Mrs. Harper had a duty, imposed by the flashing amber light, to proceed through the intersection "only with caution." This, even on her own evidence, she did not do. She had the correlative duty, in the words of *Marvil,* "if circumstances indicate that the approaching vehicle will not stop

* * *" to avoid the collision, if she could. The circumstances here not only indicated to the passenger in the Harper car, who did look, that the Hurry vehicle was going to enter the intersection but included one of the very things *Greenfeld v. Hook* said could endanger an unfavored driver who entered a boulevard without negligence, that is, "some defect in the motor" which prevented control of the car. As in the *Sun Cab* case, the favored driver, Mrs. Harper, according to the testimony of her passenger, was completely inattentive to what was ahead in the road because she was so busy talking she did not look until yelled at just before the then inevitable collision. Without any "nice calculations of time, speed and distance," the jury could have found from all the testimony that if Mrs. Harper had kept a proper lookout she would have seen the Hurry car in its position of obvious peril in time to have avoided it by stopping, or otherwise. The rule that the favored driver is not made negligent by failing to look is not controlling because here Mrs. Harper would not have been entitled to rely on the usual assumption that the unfavored car would not come into the boulevard because of the evidence it already had come in and stalled.

The case of *Baltimore Transit Co. v. O'Donovan*, 197 Md. 274, 278, is to be distinguished on the facts, for the reasons it was distinguished in the *Sun Cab* case, namely, that in *O'Donovan* the driver "had the right to assume that the other vehicle, in a place of safety by the grass plot, would remain there and yield the right of way," not suddenly play jack rabbit and pull out into the through street. There was no amber "caution" requirement in *O'Donovan,* the driver of the favored vehicle was not inattentive, and the distance between the favored and unfavored cars was short when the latter pulled out and stalled. Thus, the proximate cause of the injury was the sudden unlawful intrusion of the unfavored car.

We think Mrs. Harper's motions for a directed verdict and for judgment notwithstanding the verdict rightfully were denied.

The complaints as to the charge to the jury are that the

court erroneously told the jury that a driver on a boulevard must decrease his speed at intersections and that if Mrs. Harper violated the "reasonable and prudent" speed limitation and her violation "directly or indirectly" caused the injury complained of, she was liable. The court read to the jury Code (1957), Art. 66½, Secs. 211 (a) and (e); (a) "No person shall drive a vehicle on a highway at a greater speed than is reasonable and prudent under the conditions then existing;" (e) driver must "decrease speed when approaching and crossing an intersection except through highways * * *."

Before this reading the jury had been told of the obligations of the unfavored driver and the rights of the favored driver as to boulevards, and that the flashing amber light meant that Harper could proceed only with caution "but this does not mean at such reduced speed and with such care that the favored driver can stop instantly upon violation of its right-of-way but, rather, that the favored driver * * * must exercise caution with the prudence of a reasonable man * * *" and that if Harper approached with the caution commensurate with the prudence of a reasonable man under similar circumstances then she was not negligent. They were told after the reading of the statute that no person shall drive a vehicle on a highway at a speed greater than reasonable or prudent under conditions as they exist, and if they found that Harper "was driving her automobile in violation of said law and that such violation directly or indirectly caused the injury complained of" she was liable.

There came next an instruction that if there was concurrent negligence and the negligence of each person "was the contributing proximate cause of the injuries, then both of such persons are jointly and separately liable for any injuries proximately resulting from their negligence."

We find no prejudicial error in the charge, considered as an entirety. Under the particular facts of the case the testing of whether due caution had been exercised by the favored driver necessarily embraced consideration of whether she properly reduced her speed, and the claim of incorrectness

and inartificiality which the appellant levels at the phrase "directly or indirectly" (which under other circumstances might be justified) was refuted by the instruction as to proximate cause, following immediately in the charge, which clarified and limited the meaning of the challenged phrase.

The court refused to allow the State policeman who had investigated the accident (and who had in the course of his work investigated some three hundred prior accidents), to testify as an expert that in his opinion the Hurry car struck the Harper car. It is true, as the appellant urges, that an approved test as to the admissibility of expert opinion is whether the jury can receive appreciable help from the particular witness on the subject, not whether the jury can decide the particular issue without expert help. In *Shivers v. Carnaggio*, 223 Md. 585, 588, we quoted 7 Wigmore, *Evidence*, 3rd Ed., Sec. 1923, and McCormick, *Evidence*, Sec. 11, to that effect, with approval. It would not have been error to have admitted the proffered testimony but we think its refusal, assuming it to have been error, was not prejudicial. The passenger in the Harper car who watched the accident happen from a vantage point, testified flatly and with precision that the Hurry car plowed into the side of the Harper car. There were some ten photographs in evidence showing the damage to the two cars. The jury could have decided how the contact between the cars was made without expert testimony, and, while this fact does not preclude the admission of such testimony, it would seem to have considerable weight in deciding whether the refusal to admit the expert testimony was a prejudicial abuse of discretion. Cf. *Christ v. Wempe*, 219 Md. 627, 633, 634, and *Empire State Insurance Co. v. Guerriero*, 193 Md. 506, 514. Further, the striking by either car of the other could have been consistent with either the Hurry or the Harper version of how the two acted and re-acted in relation to the boulevard law, the decisive points in the case, particularly in view of the testimony that the Hurry car eased ahead from the use of the starter, after it stalled under the blinker light.

In his argument to the jury, counsel for Mrs. Higgs listed

on a blackboard the expenses incurred by her and her husband and then argued to the jury that the verdict in addition should include amounts for pain and suffering measured by so many dollars for each day of suffering (the duration and intensity of the pain suffered by Mrs. Higgs by reason of her very serious and permanent injuries had been testified to in detail by her and her doctors). For example, he suggested a valuation of $500 a day for the first week and $100 a day for the next four months, and so on. Mrs. Harper's counsel moved for a mistrial when the argument was begun and again when the suggested total figure of $77,795.00 was put on the blackboard. At that point the trial judge told the jury the suggestions and illustrations of plaintiff's counsel were no more than part of his argument and that his method of arriving at what he thought was an appropriate verdict was in no way binding on them, and that it was their function and theirs alone to award such damages as they found proper under the law and the evidence.

The propriety and legality of the so-called per diem argument as to damages has been the subject of extensive judicial consideration in recent years. In 1958 the Supreme Court of New Jersey changed its previous views and held the argument improper in *Botta v. Brunner,* 138 A. 2d 713. Delaware, Virginia, Missouri and Wisconsin later followed suit. Pennsylvania had long disapproved of the practice.[1]

The majority of the States, it would appear, permit such arguments. See annotation in 60 A. L. R. 2d 1347, entitled "Per Diem or Similar Mathematical Basis for Fixing Damages for Pain and Suffering;" O'Connor, "Some Anti-Biotic Thoughts in an Anti-Botta World," Daily Record, February 4, 1961, and *Louisville & Nashville Railroad Co. v. Mattingly* (Ky.), 339 S. W. 2d 155, 161. The arguments pro

---

1. Henne v. Balick (Del.), 146 A. 2d 394, 398; Certified T. V. and Appliance Co. v. Harrington (Va.), 109 S. E. 2d 126, 131; Faught v. Washam (Mo.), 329 S. W. 2d 588, 603; Affett v. Milwaukee & Suburban Transport Corp. (Wis.), 106 N. W. 2d 274, 279; Goodhart v. Pennsylvania Railroad Co. (Pa.), 35 A. 191 (1896).

and con are well summarized and discussed in *Ratner v. Arrington* (Ct. App. Fla.), 111 S. 2d 82.[2]

The subject was a topic of discussion at the Maryland Judicial Conference of 1960. It appeared that the per diem form of argument was allowed by most of the trial judges of the State but not by all, and that where it was allowed, cautionary instructions were given the jury that argument was not evidence and they alone must determine the proper verdict. Generally the argument had to be made in the opening speech of counsel for the plaintiff; if made in the closing argument, the defendant was permitted to rebut it. Some of the trial judges felt that the "oversized," if not astronomical amounts built up and claimed under the per diem formula defeated their own purposes and caused the jury to react so as to bring in a lower verdict than they would have otherwise.

We find no need to decide the question in this case. There is no claim in Mrs. Harper's brief that, if she were liable at all, the verdict was excessive, or even large, and certainly

----

2. The arguments against allowance of the per diem argument include: there is no evidentiary basis for converting pain and suffering into monetary terms; to suggest monetary equivalents for pain and suffering amounts to the giving of testimony or the expression of opinions not disclosed by the evidence; juries frequently are misled into the making of excessive awards, and admonitions of the trial court that the argument is not evidence does not erase the prejudice; the defendant is put at a disadvantage by being required to rebut an argument having no basis in the evidence.

The arguments for allowing the per diem formula include: it is necessary that the jury be guided by some reasonable and practical considerations; a trier of facts should not be relegated to a guess; the very absence of any evidentiary yardstick makes the contention that counsel's suggestion mislead the jury highly doubtful; the argument does no more than present one method of reasoning which the trier of the facts may employ to aid him in making a reasonable and sane estimate; that the argument is not evidence but only illustration or suggestion and that the claimed danger that it will be mistaken for evidence is not only exaggerated but is dispelled by the court's instructions on the point; and, finally, that when counsel for one side has made such an argument the opposing counsel is equally free to suggest his own amounts from the same evidence available to plaintiff's counsel.

no showing in the record that it was. Her counsel frankly stated at the oral argument that in view of the very painful and serious injuries and their drastic permanent effects, the verdict was not excessive. If we assume without deciding that the argument was improper, we see no prejudice to have resulted from its use. The amount claimed was over $77,000. The jury's verdict was less than a third of this. Compare *Imperial Oil, Ltd. v. Drlik* (6th Cir.), 234 F. 2d 4, 11, cert. denied 352 U. S. 941, 1 L. Ed. 2d 236, in which a calculation by a judge in the manner argued for by Mrs. Higgs' counsel was held to be at the most harmless error since the verdict was not excessive.

*Judgments affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion.

I regret that I am unable to agree with the opinion of the Court in this case on any of the points discussed. On the first point I think the case might well be entitled "The Undue Haste of Mrs. Hurry".

The opinion recognizes that under the boulevard cases a favored driver cannot be found guilty of negligence contributing to the happening of an accident merely because of a failure to observe an unfavored vehicle or to anticipate that it will fail to stop or yield the right of way. The fact that this intersection was controlled by flashing red and amber lights rather than stop signs does not prevent the application of the boulevard rule, as was held in *State v. Marvil Package Co.,* 202 Md. 592. Cf. *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 181, cited in the *Marvil* case, where it was said that warning or cautionary signs "cannot have the effect of limiting the privilege of uninterrupted travel on a favored highway which the statute confers." In the *Marvil* case the fact that the favored driver did not look to right or left in going through the intersection or see the other car until an instant before the collision did not prevent the Court from holding that the proximate cause of the collision, as a matter of law, was the action of the unfavored driver.

In *Sun Cab Co., Inc. v. Hall,* 199 Md. 461, the Court found that a jury question was presented against the favored driver because of testimony of a passenger that the unfavored driver entered the intersection when the favored vehicle was one-third of a block away and that the cab driver, had he been looking, could have seen it in the intersection and could have stopped in time to avoid the collision. The case of *Baltimore Transit Co. v. O'Donovan,* 197 Md. 274, was distinguished on this ground. The *Sun Cab* case is the only case since *Greenfeld v. Hook,* 177 Md. 116 (1939), where this Court has found facts to warrant submission of a case to the jury in a boulevard situation as against a favored driver. In both of those cases the situation was analogized to one of last clear chance. The case of *White v. Yellow Cab Company,* 216 Md. 286, 289, limits the *Sun Cab* case to situations where there is evidence that the favored driver could have stopped after he saw or should have seen the other vehicle in a position of peril. During this whole time the legislature has made no relevant change in the applicable statutes, and as Judge Markell, for the Court, observed in *Sonnenburg v. Monumental Tours,* 198 Md. 227, 233, "Decisions of this court construing the statute become part of the statute and continue to be so unless and until changed by statute."

The *Sonnenburg* case (p. 237) was taken from the jury because "If he had looked later than he says he looked, without slowing down and bringing the bus into control, there is no evidence that he could have avoided the accident." Cf. *Schwartz v. Price,* 215 Md. 43, 48. In *Baltimore Transit Co. v. O'Donovan, supra,* it was argued that a case was made out because the unfavored driver testified that his motor stalled, blocking the intersection, and he tried twice to start it, but it was held that testimony that the car blocked the intersection for a matter of seconds was not sufficient in the absence of testimony as to where the favored vehicle was at that time. In *Shriner v. Mullhausen,* 210 Md. 104, 113, the "passing" cases were distinguished, and it was pointed out that the obligation to yield the right of way extends to the entire passage across the favored highway. It was held

(p. 118) that the favored driver was not guilty of negligence under any theory of last clear chance, although the blocking of the highway must have been visible to the favored driver when she came over the crest of a hill several hundred feet away, because she was confronted with an unanticipated emergency.

None of the cases cited in the opinion in the instant case supports the conclusion here reached on the facts. They are cited not for what they hold but for what they say by way of prudent disclaimer as to how far the court might go under other circumstances. Reliance upon such disclaimers tends to obscure that clear and consistent line of demarcation which, whether abstractly correct or not, this court should always seek to lay down for the guidance of the bench and bar. I am unable to distinguish the cases cited on their facts.

There were two different versions of the collision in the instant case. Mrs. Hurry and her passenger testified that she stopped at the intersection, proceeded into it and stalled in the middle. Neither witness saw the favored vehicle until just before the impact and so could not testify as to whether the favored vehicle could have been stopped or not. They testified the favored vehicle struck the unfavored one on the right side. Under the cases cited the passenger's estimate that the car remained stalled for a few seconds is not enough to support an inference that the favored vehicle could have been stopped, wholly apart from the question of the emergency with which the favored driver was presented.

The other version is that of Mrs. Harper and her passenger. Mrs. Harper testified she saw the other car and thought it would stop. She had slowed down for the blinking light. The other car did not stop for the intersection and struck the left side of her car. Her passenger agreed, except that she anticipated that the other car was not going to stop, and tried to warn Mrs. Harper, but when she did, Mrs. Harper asked, "Where?", just at the moment of impact. Under the cases cited I think the testimony is insufficient to support an inference that had Mrs. Harper been more attentive, she could have anticipated that the other car would fail to stop and

yield the right of way and that she could have then avoided the collision by stopping. There is no evidence, above speculation, as to how close the vehicles were at the moment of intrusion.

As the cases demonstrate, a favored driver is not obligated to anticipate that an unfavored driver will disregard the statutory injunction, and, except in rare situations analogous to last clear chance, the proximate cause of the accident is the unlawful intrusion of the unfavored car. That principle was clearly laid down in *Sun Cab Co. v. Faulkner*, 163 Md. 477 (1932), a case which has been repeatedly cited and followed. I think the Court should have directed a verdict in favor of Mrs. Harper.

Passing the point as to the Court's instructions, which, I think, did not meet the tests so recently laid down in *Eastern Contractors, Inc. v. State*, 225 Md. 112, I think the Court committed reversible error in excluding the testimony of the State policeman. If he had been allowed to reconstruct the accident from the observed physical facts, as he was qualified to do (cf. *Acme Poultry Corp. v. Melville*, 188 Md. 365, 373), it might have thrown a clear light upon which version of the accident was correct. If, for example, he had testified that the front of the unfavored vehicle struck the side of the favored one, it would have tended to discredit the testimony of Mrs. Hurry and her passenger that her car stalled in the middle of the road before the impact.

Finally, I cannot agree that the action of the plaintiff's counsel in calculating upon a blackboard the per diem value he placed upon the plaintiff's pain and suffering was not prejudicial. For present purposes I assume, without deciding, as do the majority of the Court, that the argument was improper. See *Botta v. Brunner*, 138 A. 2d 713 (N. J.), and *Henne v. Balick*, 146 A. 2d 394 (Del.). In *Certified T. V. & Appliance Co. v. Harrington*, 109 S. E. 2d 126 (Va.), the court reversed a judgment and ordered a new trial as to damages alone, although the verdict was considerably less than the amount so demonstrated. I find it difficult to say that the error was cured by verdict, when it is impossible

to say whether the jury might or might not have rendered a smaller verdict if the improper argument had not been made. I think this Court should have considered the question on its merits.