ZEAMER, ET AL., ETC. *v.* REEVES, ET AL.

[No. 273, September Term, 1960.]

*Decided June 13, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*John M. Robb* for the appellants.

*Thomas N. Berry,* with whom were *Walter C. Capper, Horace P. Whitworth, Jr.,* and *Capper, Jenkins & Berry* on the brief, for the appellees.

SYBERT, J., delivered the opinion of the Court.

This is a joint tort action brought in the Circuit Court for Allegany County by appellants Jean C. Zeamer, driver of her husband's automobile, for personal injuries; R. Warwick

Zeamer, her minor son, a passenger, for personal injuries; and Richard J. Zeamer, her husband, for damages to his automobile and medical expenses for wife and son, against the operator of the other vehicle, Harry V. Reeves, Sr., and his employer, Reeves Motor Co., appellees. Reeves and his employer filed a counter-suit for injuries and vehicle damage and the cases were consolidated for trial before a jury.

The jury found verdicts in favor of the Zeamers in their action and in the counter-suit. Reeves and his employer filed motions for a new trial and for judgment N.O.V. in the original action. The latter motion was granted by the trial court, thus setting aside the verdict for the Zeamers, and judgment was entered in favor of Reeves and his employer. The Zeamers appeal from the judgment. (No motions were filed, nor was an appeal entered in Reeves' counter-suit against the Zeamers.) The issues presented are, first, whether Reeves was guilty, as a matter of law, of any negligence proximately causing or contributing to cause the accident; and second, whether Mrs. Zeamer was guilty of contributory negligence as a matter of law.

At about 4:10 P.M., on September 30, 1959, a "misty * * * gloomy, rainy day," Mrs. Zeamer and her son, aged 10, were proceeding east in the family car on McCoole Road, a two-lane macadam highway about 26 feet wide, in Westernport. She wished to turn around and go in a westerly direction in order to let her son out on the proper side of the highway at the home of his music teacher. To accomplish this, she turned right into the parking lot of an A. & P. supermarket, located on the southerly side of the highway, circled through the parking lot and returned to the edge of the highway, where she stopped preparatory to turning left thereon. Mrs. Zeamer testified that in the lot there were cars parked up to the very edge of McCoole Road and that traffic on the eastbound lane of the highway itself was very heavy, "a constant stream of cars into the A. & P. and some would go ahead and some would go into the A. & P." The entrance to the parking lot, through which she had just come, was "a good 50-60 feet" on her left. Looking both to her right and left (she didn't recall which way she looked last) until she "saw the way was

clear," she then started across the highway, proceeding some-what diagonally to her left. She said she was almost across the eastbound lane and into the westbound lane when she "saw a car where there shouldn't have been a car" coming toward her from the left, driven by Reeves, "a good car's length" away. A collision followed, the left front of Reeves' car strik-ing the side of the Zeamer car at the left front door. After the impact Mrs. Zeamer continued across the road, where she parked, while the Reeves car stopped a few feet from the point of collision. There was conflicting testimony both as to the speed of the vehicles involved and whether at the time of collision the Reeves car had been straddling the broken line in the middle of the highway. A police officer who investi-gated the accident testified that the Reeves car after the col-lision was standing with three wheels in the southerly or east-bound lane, but with its left front wheel approximately eighteen inches across the centerline. Reeves testified that he had been driving on his side of the street and that the impact "knocked me out there".

In ruling upon the propriety of the granting of a motion for judgment N.O.V., we are required, of course, to review the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. However, a careful review of the evidence in this record requires the conclusion that un-der applicable authorities Reeves was not guilty as a matter of law of any primary negligence, and thus the trial court properly granted the motion for judgment N.O.V. as to all three appellants.

This is a situation where an unfavored driver entered a fa-vored highway from a private driveway. The statute directly involved here is not the so-called "boulevard law", Art. 66½, § 233 (Code, 1957), but is § 234 of that Article, which reads:

> "The operator of a vehicle entering a paved pub-lic highway, which is hereby defined to be a highway having a hard, smooth surface, composed of gravel, shells, crushed stone, paving blocks, asphalt, con-crete or other similar substance, from an unpaved public highway, or from a private road or drive, shall come to a full stop upon reaching the inter-

section, and yield the right of way to all vehicles approaching on such paved public highway."

The same section of the statute (then § 199) was applicable in *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570 (1956), which we think is controlling in the case before us. In *Mullhausen,* a driver on the favored highway, moving at or near the speed limit, came over the crest of a hill approximately 225 feet from an unmarked farm driveway and collided with heavy farm machinery entering the highway from the driveway. The Court found the operator of the farm machinery guilty of negligence in not yielding the right of way, even though the car was hidden from his view by the hill when he began to enter the highway, and held there was insufficient evidence to show that the driver of the car was guilty of contributory negligence or negligence under the last clear chance doctrine. The Court ruled that § 199 (now § 234) must be accorded the same interpretation as the "boulevard law," stating, at page 114:

> "The wording in Sections 198 and 207, *supra,* the boulevard statutes, are practically identical with the wording in Section 199, *supra.* The many decisions of this Court construing the boulevard statute have become a part of that statute and will continue to be so until changed by the Legislature. *Sonnenburg v. Monumental Tours,* 198 Md. 227, 233, 81 A. 2d 617. Section 199, *supra,* was adopted by the Legislature by Chapter 1007, Section 179, of the Acts of 1943, approved May 6, 1943. The Legislature, when it passed that Act, must have known how this Court construed the boulevard statute in 1939 in *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888, 136 A.L.R. 1485, and subsequent cases such as *Pegelow v. Johnson,* 177 Md. 345, 350, 351, 9 A. 2d 645; *Madge v. Fabrizio,* 179 Md. 517, 520, 521, 20 A. 2d 172; *Rinehart v. Risling,* 180 Md. 668, 674, 675, 26 A. 2d 411. * * * Therefore, we must give the same interpretation to Section 199, *supra,* as has been given by this Court to Sections 198 and 207, *supra,* the boulevard statutes."

The interpretation and underlying theory of the law in regard to boulevard traffic were enunciated in *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939), and have since then been restated many times. At the current term, this Court has again considered the subject at length in *Eastern Contractors v. State,* 225 Md. 112, 169 A. 2d 430 (1961); *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961); and *Green v. Zile,* 225 Md. 339, 170 A. 2d 753 (1961). Judge Hammond, for the Court in *Harper v. Higgs, supra,* at page 31, again expressed this Court's view of the basic requirements of the law: "A motorist must stop before he drives onto a boulevard and yield the right of way to vehicles thereon during their passage past the intersection. The relative rights of travellers on the two intersecting roads are not to be held to depend on nice calculations of speed, time and distance lest the obvious and essential purposes of the boulevard rule to accelerate the flow of traffic over the through highway at the permitted speed, without interruption, be frustrated. The favored driver has a right to assume the unfavored driver will stop and yield the right of passage and therefore, in most instances, even though the favored driver does not see the unfavored car he will not be guilty of negligence proximately causing the accident for, if he had seen it he could, unless put on notice to the contrary, have assumed it would stop."

While the favored driver is not relieved of the obligation to use due care under the circumstances then existing, yet "* * * in determining due care, the assumption that the unfavored driver will stop and yield the right of way is an important factor." *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 180, 49 A. 2d 537 (1946).

Applying to the case before us the interpretation given to the "boulevard law", it was incumbent upon Mrs. Zeamer as the unfavored driver to exercise reasonable care and diligence to determine whether any vehicle was approaching the driveway and to have her car under such control as to be prepared to yield the right of way. *Pegelow v. Johnson,* 177 Md. 345, 9 A. 2d 645 (1939); *Carlin v. Worthington,* 172 Md. 505, 192 Atl. 356 (1937). The testimony shows that her view of the highway was at best limited by the weather conditions,

by the fact that cars in the adjacent lot were parked up to the side of the road, and by the line of cars waiting to turn into the parking lot. In regard to through highways, this Court has held that when the unfavored driver's view is obstructed so that he is unable clearly to observe approaching traffic, he must either wait until the obstruction clears, or take adequate measures to discover whether the way is clear. *Blinder v. Monaghan,* 171 Md. 77, 188 Atl. 31 (1936). It is plain from the testimony that Mrs. Zeamer had not fulfilled either precautionary requirement. She drove onto the highway while the cars turning into the lot were at least partially blocking her view. It was raining rather hard, and she testified that while her side window was up as she crossed the highway, she had cleaned it off before proceeding by rolling it up and down. The prudent act would have been to leave it down at least until she had made the turn onto the favored highway.

Appellant seeks to avoid the strict duties placed upon the unfavored driver by charging Reeves with excessive speed, reckless driving under the circumstances present, and driving on the wrong side of the road. She cites two cases to support her argument that these elements, if present, were enough to make the question of Reeves' negligence one for the jury to answer: *Sun Cab Co. v. Hall,* 199 Md. 461, 86 A. 2d 914 (1952), and *Ness v. Males,* 201 Md. 235, 93 A. 2d 541 (1953).

We find the contention unsustainable on the record before us. There was no sufficient evidence of excessive speed on the part of Reeves to warrant the submission of that question to the jury. Mrs. Zeamer testified that the Reeves car was approaching "at a fair rate of speed", and again, that it was "coming fast". This Court has said that negligence may not be inferred from adjectival descriptions alone, but must be drawn from facts. *Jones v. Baltimore Transit Co.,* 211 Md. 423, 127 A. 2d 649 (1956). The unfavored driver may not relieve herself of the duty of yielding the right of way by simply claiming that the favored driver was exceeding the speed limit. *Mason v. Triplett,* 217 Md. 433, 141 A. 2d 708 (1958) ; *Davis v. Taylor,* 217 Md. 84, 141 A. 2d 706 (1958).

Mrs. Zeamer's claim that Reeves was "straddling" the

center line of the road is also not clearly established by the evidence. Appellant cites the testimony of two witnesses to support her statement. However, their testimony related to the position of the Reeves car *after* the collision, when it was established that his left front wheel was 18 inches over the center line, while the other three wheels were on his own side of the highway. One of these witnesses testified, in fact, that before the collision he had seen Reeves "driving along on the right hand side of the road". Mrs. Zeamer's own testimony showed that part of her car was in the eastbound lane when the collision occurred, so that even if Reeves' car was partly over the center line that fact would not have been a proximate cause of the accident. This Court, in *Sun Cab Co., Inc. v. Cusick,* 209 Md. 354, 361, 121 A. 2d 188 (1956), stated: "However, even if it is a fact that he was driving in the center of the avenue, he could not be charged with negligence for so doing, because such fact was not the direct and proximate cause of the accident, as there might have been a collision even if the cab had been traveling upon the right half of the avenue."

The case of *Ness v. Males, supra,* cited by appellant, can offer her no help. It was not a boulevard but a "passing" case since the evidence was undisputed that the driver of the automobile entering the through highway had completed his turn into it from the intersecting road and had proceeded on his side of the highway a substantial distance prior to the collision. The other case cited by Mrs. Zeamer, *Sun Cab Co. v. Hall, supra,* is also clearly distinguishable on its facts. There the favored driver, a taxicab operator, had had his head turned to the right, talking over his shoulder to a passenger in the rear seat immediately before the collision with the unfavored driver. In that case this Court stated that "* * * had the cab driver been looking, he could have seen the other car entering the intersection, and he could have seen this when he was far enough away to have avoided the accident * * *."

There is no evidence that Reeves was not looking, and it is clear from Mrs. Zeamer's own testimony that he did not have sufficient time to stop—she testified she did not see him

until he was "a good car's length or more" away. The burden was on Mrs. Zeamer to wait until the road was clear.

Since we find no primary negligence on the part of Reeves, the judgment will be affirmed.

*Judgment affirmed, appellants to pay the costs.*