RODRIGUEZ, ET AL. *v.* LYNCH

[No. 336, September Term, 1966.]

*Decided May 8, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES, McWILLIAMS and FINAN, JJ.

*Karl G. Feissner,* with whom were *Alpern & Feissner* on the brief, for appellants.

*Craig S. Rice,* with whom were *Heeney, McAuliffe & Mc-Auliffe* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This case has a "man bites dog" air about it. The trial judge directed a verdict in favor of appellee (Lynch) at the conclusion of the plaintiff's case. From the ensuing judgment Rodriguez, a 9 year old native of Spanish Morocco, has appealed.

At 11:00 A.M., on 30 July 1964, Lynch was westbound on Elson Street in Carole Highlands. Rodriguez and another boy, on bicycles, were southbound on 16th Avenue. When Lynch saw that they were not going to stop and yield the right of way, as required by the stop sign on the northwest corner of the intersection, he tried to stop. Rodriguez ran into the right side of his car. His bicycle "bounced onto the ground." After the impact Rodriguez "was standing on the ground * * * on his feet * * * with his left arm through the windshield." The other boy went safely behind Lynch's car.

We must decide whether the evidence considered in a light most favorable to Rodriguez together with the proper and legitimate inferences to be drawn therefrom is sufficient to establish a prima facie case of primary negligence on the part of Lynch. *Gatling v. Sampson,* 242 Md. 173, 175, 218 A. 2d 202 (1966).

Officer Richard Shaner, of the Prince George's County Police Department, arrived at the scene of the accident soon after it happened. He was appellant's first witness. It was a sunny day, he said, and the street was dry. Elson Street is 30 feet wide, 16th Avenue is 26 feet 4 inches wide. He said the right front tire of Lynch's car was 44 feet 3 inches from a "power pole on the northeast corner" and 37 feet 8 inches "from a fire plug." He said the pole was "here" and "the fire plug here." Counsel must have assumed we are latter-day Merlins because there is nothing in the record which tells us where "here" is. The diagram and the photographs of the intersection are missing from the transcript. Officer Shaner also described the front

tire as being approximately 25 to 30 feet from the "crosswalk of Elson Street" but he did not volunteer, nor was he asked, which crosswalk he had in mind, the east or the west. He said "the bicycle was laying at the right rear of * * * [Lynch's] vehicle" the damage to which, in addition to the windshield, he described as "scratches to the right front fender, the door, and * * * some damage to the right rear fender." He "observed" no skid marks. There was a warning sign 100 feet east of the intersection, he testified, but no one asked him what the sign warned against, nor did he volunteer any information in that regard. He described the tree-covered bank of earth on the northeast corner and explained how it "partially obstruct[ed] the view" of both Rodriguez and Lynch. He talked to Lynch "at some length." He said there was no evidence Lynch had been drinking and that he "appeared to be normal." He thought Rodriguez "failed to yield the right of way."

Counsel for Rodriguez then read to the jury excerpts from a pre-trial deposition of Lynch. No other parts of the deposition were offered in evidence. It was established by the excerpts that the boys were approximately two car lengths from the intersection when Lynch first saw them. He had been going 15 to 20 miles per hour, he said, but he couldn't judge the speed of the bicycle. He estimated it was "probably just a matter of seconds" after he saw the boys that Rodriguez hit the side of his car. Pressed to be more exact he guessed it was "between five and ten [seconds], possibly nearer five." Rodriguez came in contact with his car "just in front of the door line to the right front fender." Lynch did not swerve to the right or left. He recalled seeing some signs in the area saying "Danger! Watch out for children."

Rodriguez next produced Lurty C. Houff. He said he was a retired policeman and that he had served for many years with the Accident Investigation Unit. His testimony was concerned exclusively with arithmetical aspects of time, speed and distance problems. It is interesting and it seems to be factually accurate but it has little or no application to the facts of this case.

Except for two doctors the only other witness was Rodriguez himself. At the time of trial he was 11 years old and his family had moved to California. He couldn't remember anything ex-

cept that he had been hit. His attention was directed, on cross-examination, to a pre-trial deposition taken in December 1965. He said he did not remember being asked, "Paul, when you were coming down that hill on your bicycle, you didn't stop for the stop sign, did you?" He said he did not remember answering, "No." He said he wouldn't deny it, however. Asked if there was a time when he did remember, he said, "I can't remember if there was a time that I did remember."

Appellant cites *Miller v. Graff*, 196 Md. 609, 78 A. 2d 220 (1951), in support of his argument that the doctrine of last clear chance is applicable here. There is not a word in *Miller* about the doctrine of last clear chance. In any event, the doctrine is inapplicable here. *State, Use of Taylor v. Barlly*, 216 Md. 94, 140 A. 2d 173 (1958). In his argument he says that Lynch observed a sign reading "School Crossing." Such evidence, even if it exists, and we did not find it, would have little meaning during the summer vacation. He argues further that because there is evidence Lynch, going 20 miles per hour, saw Rodriguez 10 seconds before the collision, appellant is entitled to the benefit of an inference that Lynch saw the boy in the intersection "250 feet away and just ran him down." This is an obvious absurdity. The principle that the evidence and proper inferences therefrom must be considered in a light most favorable to the plaintiff, in these circumstances, does not require "the taking of isolated sentences, or parts of sentences, in the testimony and construing them out of context, without any regard to the rest of the witness's testimony." *Gatling, supra.* Appellant also states in his argument that "there *were* no skid marks" to indicate that Lynch "even tried to stop." Officer Shaner said he did not *"observe* any skid marks." (Both of preceding emphases supplied.) Neither did he say he looked for them. Moreover, in a portion of the deposition known to counsel but *not* read to the jury, Lynch, asked about skid marks, said he "observed" them and they were "approximately four feet" long. Appellant makes much of Lynch's "unlawful rate of speed" but there was no showing that 15 to 20 miles per hour was unlawful and the officer did not charge him with any traffic violation.

Rodriguez seems to be trying to convince us that it was he,

not Lynch, who had the right of way. He insists that Lynch had "sufficient time to safely stop his automobile," that he was negligent for not stopping "when he had sufficient time to do so," that he "did not have his automobile under control as he reached the intersection," that he had "ample opportunity to stop his automobile." It seems to us the shoe is on the other foot. Lynch was the favored traveler. He was under no obligation to stop or yield the right of way to Rodriguez. Indeed, he was entitled to assume that Rodriguez would obey the stop sign and yield the right of way. *Brown v. Ellis,* 236 Md. 487, 496, 204 A. 2d 526 (1964); *Harper v. Higgs,* 225 Md. 24, 31, 169 A. 2d 661 (1961).

The conspicuous, significant and undisputed fact is that when Lynch's car came to a stop the bicycle "was laying at the right rear" of his car and Rodriguez "was standing on the ground * * * on his feet * * * with his left arm through the windshield." It would seem to follow that Lynch did stop, that at the instant of collision his forward motion had ceased, that it was Rodriguez who did not have his bicycle under control, that it was Rodriguez who had been traveling at a speed greater than reasonable and proper. Rodriguez makes much of the fact that Lynch did not swerve to the right or to the left. There is nothing in the evidence to show that either course, right or left, would have mitigated or avoided the collision. Indeed, one can easily imagine the possibility of more serious injuries. Reasonable men would agree that a panic stop, in the circumstances, is the instinctive reaction of the average driver and, we might note, Lynch, by so doing, made it possible for Rodriguez to swerve, as did his companion, to avoid the collision. It seems reasonable to suppose that he would have been able to do so had he been traveling at a reasonable and proper speed and in control of his bicycle.

The case at bar is so much like *Gatling, supra,* that it is odd it was not cited by either side. There the motorist saw children 125 feet away playing along the side of the street. One of them ran in front of his car. He stopped within a few feet after striking the child. He had been going 15 to 20 miles per hour. Chief Judge Prescott, who spoke for the Court, said:

"There was no testimony to establish excessive speed, reckless driving or the drinking of alcoholic beverages on the part of the appellant. And the physical facts were consistent with a conclusion that appellant was proceeding at a moderate rate of speed on his right side of the road and keeping a proper look out (his car stopped within a few feet after the impact according to witnesses from both sides)." *Id.* at 183.

Although the trial judge expressly refrained from making a finding of contributory negligence the question is raised in the briefs. We do not reach that question, however, because, in our judgment the trial judge correctly decided that the evidence offered on behalf of Rodriguez was insufficient to establish a prima facie case of primary negligence on the part of Lynch.

> *Judgment affirmed.*
> *Costs to be paid by appellants.*