D. ELDRED RINEHART *v.* NELLIE M. RISLING

[No. 24, April Term, 1942.]

*Decided May 26, 1942.*

The cause was argued before DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*William P. Lane, Jr.,* with whom were *E. Stuart Bushong* and *Elmer B. Gower* on the brief, for the appellant.

*John Wagaman,* with whom were *Charles F. Wagaman* and *Estel C. Kelley* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by D. Eldred Rinehart, the owner of a truck, appellant, from a judgment rendered against him in favor of Nellie Risling, appellee, as a result of a verdict by a jury in the Circuit Court for Allegany County.

On September 4, 1939, the appellee, together with four other persons, visited the fair at Timonium. They left there between seven and eight o'clock in the evening to go back to Westminster. Having lost their way, they stopped at an eating place to get lunch and inquired about the road. After receiving directions from a man at the lunch room they proceeded southerly on the Gamber Road. It was raining hard as they approached the stop sign at the intersection of the Gamber Road and Route 140. As they approached that intersection on Gamber Road, there is a bank of earth which obstructs the vision of a car approaching the intersection on the State Highway Route 140 coming from the right. At the intersection the State Highway is 19.8 feet wide including the concrete shoulders and there is an up

grade of approximately 4.6 per cent. The width of Gamber Road at the intersection is 19.4 feet and the down grade is about 4 per cent. The appellee was seated on the right-hand side of the rear seat at the time of the accident and was asleep and did not know anything until the collision, when she was severely injured. Seated next to her in the center of the back seat was a Mrs. Yates. A Mr. Bell was on the left of the rear seat and was also asleep at the time of the accident. The driver of the car was Mr. Kenneth Bowers and seated on the front seat to his right was his wife, Mrs. Nora Bowers.

The driver of the car in which the appellee was riding testified that as he approached the intersection he was driving about twelve of fifteen miles an hour. It was raining hard and he observed the stop sign on the right side of the road. He stopped between the bank and the road. He could see down the road one hundred yards as he was out past the bank and there was no obstruction to his view. His windshield was clear and both windshield wipers were working perfectly, and the windows in the right and left front doors and the rear windows were clear. From time to time on the trip home his wife wiped off the glasses on her side very often because the vision was obstructed through the side windows on the right. He thinks that his wife wiped off the glass after they stopped at the intersection. As he approached the intersection he did not know where he was. His lights were lighted and showed a garage on the other side of the road and a direction sign. He pulled up to the boulevard sign and stopped and looked both ways as did also his wife and Mrs. Yates. He didn't see any lights at all, put his car in low gear and went across at the rate of about four or five miles an hour. Just at the time of the crash he saw a light flash and shine in the right side of the car and that is all he saw. The hind wheels of his car were passing right over the shoulder of the opposite side of the road as his car was struck from the rear axle back to the end by the truck. There was enough

room behind his car at the time of the crash for another vehicle to have gone through the intersection without striking him. He crossed the road with the intention of stopping over there and looking at the direction sign to find the way to Westminster.

Mrs. Maude Yates corroborates the testimony of Mr. Bowers, but says that the car was approximately one-half way or two-thirds of the way across and she saw a flash of light and the instant she saw it the crash came. She also stated that the rain interfered with her seeing out to a certain extent, but that she could could see and at the time they arrived at the intersection it was raining very hard.

Mrs. Nora Bowers, the wife of the driver of the car, also corroborates the testimony of her husband. She says that the windows on her right and front were clear except for the rain which was beating in on her. She had a rag in her hand with which she was wiping the water off as the rain was beating against the right-hand side of the car in hard dashes. As they kept going across the intersection the rain was dashing against her side of the car pretty hard.

For the defendant, the driver of the truck, William B. Wiles, testified that he was driving a ton and a half truck loaded with peaches and lima beans, the weight of the load being around three and one-half tons. He left Smithsburg around 9 P. M. and was accompanied by Mr. Jonas Blickenstaff on their way to Baltimore for the purpose of taking produce to market. It was raining when they started on the trip and raining at the time of the accident. The truck was equipped with one windshield wiper on the driver's side, which was operating. As he approached the intersection where the accident happened, the truck was traveling easterly approximately twenty miles an hour in fourth gear and he was getting ready to change it into third gear. The truck was equipped with two headlights, two fog lights and five little clearance lights in front. The clearance lights are green, the five lights amber, and the headlights are

white. The headlights were on high beam. As he approached the intersection the headlights, the fog lights and the clearance lights were all lighted and the beam of his lights extended nearly to the top of the hill ahead of him past the intersection. The first notice he had that there was a car coming from the intersection from the Gamber Road was when the headlights shone out from behind a bank right in front of him to his left. At that time he was right on top of it. The car came out of the Gamber Road at a pretty lively rate. He applied the brakes right away. The car ran directly in front of him and he hit it from the center of the front door back to the hind end. Both he and Blickenstaff saw the car about the same time and Blickenstaff hollered, "Look out, Bill," or something like that. The car was thrown against the bank on the right-hand side down the Gamber Road. The truck turned crosswise and came to a stop ten or twelve feet past the intersection. After the collision the headlights on the truck were still burning, the fog lights were broken off. As he approached the intersection he doesn't think that he sounded his horn. He did not have time to sound the horn between the time he saw the automobile and the time he hit it. He was looking straight ahead as he approached the intersection to see if any automobiles were coming at the cross road and he could see down the highway in the direction in which he was traveling. He knew that he was traveling on the State Boulevard and that he was protected by boulevard signs. He stated that there was no steam on the windows or windshield on the inside of the cab of the truck. A little steam got on the inside of the windows and windshield at times and that he had wiped it off several times but there was none at the time of the accident. Prior to the happening of the accident he had been talking and joking with Mr. Blickenstaff but as they came up the grade toward the intersection they weren't talking at that time. As he approached the intersection the truck was in the right lane to the right side of Route 140 and had its right wheels on the

concrete shoulder at the time the Bowers' car shot right out in front of him. He doesn't recall how far to the left he turned toward the back of the Bowers' car but he was still in the right lane at the time of the collision.

Jonas Blickenstaff, the occupant of the truck, corroborated the testimony of Mr. Wiles. He further said that on his side steam had collected a little around the bottom of the glass in the door. He did not know whether there was any steam on the windshield or not. In a signed statement offered by the plaintiff it was shown that Blickenstaff stated after the accident: "It was raining hard and all the windows were closed and steamed up inside, but I don't think that caused us not seeing the car."

The State police officer, offered by the defendant, testified that when he arrived at the scene thirty or forty-five minutes after the accident, the fog lights were broken off the truck. All the other lights on the truck, including the tail light, were burning when he arrived. The headlights were on dim. The truck was about fifteen feet east of the intersection on Route 140 headed toward the bank on the right-hand side.

A number of exceptions were taken by the appellant to evidence offered by the appellee and to the granting of the plaintiff's prayers. Exception was taken to the refusal by the trial court to grant the defendant's A prayer, being a demurrer prayer, that there was no legally sufficient evidence in the case to entitle the plaintiff to recover. Exception was also taken to the refusal of defendant's B prayer that there was no legally sufficient evidence to show any negligence on the part of the defendant as the proximate cause of the accident.

We will first consider the refusal of the trial court to grant defendant's A prayer. As was stated in the opinion recently filed in the cases of *Clautice v. Murphy (Clautice v. Vance)*, 180 Md. 558, 26 A. 2d 406, the first question that arises is whether this prayer is sufficient under Rule 4 of the General Rules of Practice and Procedure, adopted by this court pursuant to Chapter 719 of the Acts of 1939. In the instant case, as in those cases, there

being but one issue of fact to which it could apply, the prayer is sufficient.

It is admitted that Route 140 was a favored way or boulevard within the purview of Code, 1939, Art. 56, Sec. 235, providing that after the stop signs have been placed by the State Roads Commission at the "entrances thereto from intersecting highways * * * it shall be unlawful for * * * any vehicle, including bicycle, to fail to stop in obedience thereto * * *."

In the case of *Madge v. Fabrizio*, 179 Md. 517, 519, 20 A. 2d 172, decided May 20, 1941, in which the appellant was a passenger in the unfavored car which was struck by the favored truck on the boulevard, Judge Johnson said: "The quoted portion of Section 235 has been construed by us in *Monumental Motor Tours v. Becker*, 165 Md. 32, 166 A. 434; *Blinder v. Monaghan*, 171 Md. 77, 188 A. 31; *Greenfeld v. Hook*, 177 Md. 116, 8 A. 2d 888 (136 *A. L. R.* 1485) ; and *Pegelow v. Johnson*, 177 Md. 345, 9 A. 2d 645, and from those decisions it may be definitely stated that for a driver to enter such a boulevard without stopping or, having once stopped, to enter upon the favored highway before yielding the right of way to vehicles thereon is an act of negligence on his part, because there is no requirement that the motorist upon the boulevard should slow down at intersections, for the reason that the purpose of the statute is to permit such vehicles to move freely, thus accelerating the flow of traffic over such favored highway; and it may also be said that the driver of a motor vehicle upon the boulevard has a right to assume that those entering thereon will respect the prohibition of the statute. The decision in *Carlin v. Worthington*, 172 Md. 505, 192 A. 356, has by some writers been regarded as in conflict with the other decisions mentioned (4 *Md. Law Review*, page 207), but as pointed out by Judge Offutt, speaking for this court in *Greenfeld v. Hook*, *supra*, a comparison of those decisions reveals no inconsistency, because in *Carlin v. Worthington* the principal ground on which the decision was based related solely to the question of proximate cause and not to relative

rights at intersections. In view, therefore, of the mandatory provision of the statute, it would follow that if one drives upon a boulevard and collides with a vehicle lawfully thereon, he himself is negligent, and under such circumstances courts will not be diligent in submitting his case to the consideration of a jury simply because he unsuccessfully attempted to dodge the boulevard vehicle, for painly to send such a case to the jury renders the statute meaningless and the result is nothing more than statutory repeal by the judiciary."

In considering this prayer, we must view the testimony and all legitimate inferences therefrom in the most favorable light from the plaintiff's standpoint. In so viewing the testimony, we find no negligence on the part of the driver of appellant's truck. There is no evidence that this truck driver was not observing the road ahead of him. It is admitted that he was on the right side of the road. There is no doubt that the lights were lighted on the truck, because the plaintiff's own witnesses testified that lights shone in the car just before the collision. It is true that three witnesses in the car testified that they looked and did not see the lights of the truck. There is no testimony however that the lights were not lighted. Under these circumstances the testimony given by the passengers in the car with respect to the lights on the truck remains negative in nature. *State v. Baltimore & Ohio Railroad Co.*, 171 Md. 584, 594, 190 A. 231. There is no evidence of any excessive speed on the part of the truck driver. Applying the rule above set forth, the driver of the truck being the favored driver had the right to assume that the unfavored car entering the boulevard would respect the provisions of the statute. It is the opinion of this Court that this A prayer should have been granted, since there is not shown legally sufficient evidence of primary negligence on the part of the truck driver. In view of this it is not necessary that we review the other exceptions.

*Judgment reversed, with costs, without a new trial.*