## SAVAGE AND WHITE *v.* MILLS, ADMR'X OF THE ESTATE OF PAUL WILSON MILLS

[No. 97, September Term, 1964.]

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, MARBURY and OPPENHEIMER, JJ.

*W. Edgar Porter,* with whom were *Porter & Cullen* on the brief, for appellant Walter T. Savage.

*John W. T. Webb,* with whom were *D. William Simpson* and *Webb & Travers* on the brief, for appellant Marion E. White.

*Patrick L. Rogan, Jr.,* with whom were *Vaughn E. Richardson* and *Richardson & Rogan* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

Both drivers in a two-car collision were sued by a passenger in one of the cars. The passenger, before trial, died of causes unrelated to the accident, and his personal representative was substituted as the party plaintiff. The jury rendered a verdict against both defendants, and each has appealed.

The accident occurred at about 6:00 p.m. on November 9,

E. CHURCH STREET

WHITE CROSS WALK LINES (VISIBLE)

FIRE HYDRANT

SCHOOL SIGN

Sign (THRU TRUCKS-1' TO CENTER-FACING EAST)

ELECTRIC CO. POLE

STOP SIGN (1' TO CENTER)

DRIVEWAY

80

54'

TEXACO SIGN (4.5 TO CENTER OF 2' SIGN)

TEXACO SIGN & LIGHT STANDARD.

SIGN (TRUCK ROUTE-1' TO CENTER-FACING EAST)

PUMP ISLAND

12.5'

10.5'

YELLOW LINE (VISIBLE IN SPOTS)

VISIBLE

VISIBLE IN SPOTS

WHITE GUIDE LINES

VISIBLE 1"

18

STREET LIGHT STANDARD

PUMP ISLAND

E. MAIN STREET

INTERSECTION OF
EAST MAIN STREET & EAST CHURCH

JANUARY 17, 1964

SCALE 1"=10'

1961, in the City of Salisbury. The streets were dry, the atmosphere was clear, and both cars had their headlights on. As the scene thereof is somewhat difficult to describe, the reporter is requested to reproduce a portion of Exhibit I in reporting the case.

Little need be added by way of explanation of the exhibit. E. Main Street is a through artery, and E. Church is not. There is a Texaco service station in the angle formed where E. Main and E. Church Streets intersect. The service station does not occupy all of the angle. At the outer edge of the Texaco property is a rounded curb. Paralleling this curb is a painted white line, which, together with the curb, was described as a "gap" or passageway, which is used for vehicular traffic from E. Church to E. Main Street and from E. Main to E. Church Street. The uncontradicted evidence shows this passageway to be a "roadway" as defined by Code (1957), Article 66½, Section 2 (47). The remainder of the point of the angle is painted (some of it only visible in spots), but there are no structural traffic signals therein. It will be noted that there is a stop sign on the south side of E. Church before its intersection with the passageway.

The appellant White was operating his automobile east on E. Church Street with appellee's decedent as his passenger. There was some testimony to the effect that he was exceeding a speed that was reasonable and proper, but, in the view that we take of the case, it will not be necessary to pursue this phase of the case further. White admitted that he did not intend to, nor did he, stop at the stop sign, believing that it was a caution signal to come to a stop at the intersection of the two streets some 110 feet east of the stop sign, and yield the right of way to traffic on E. Main Street. He stated that he did not see the other car until it was about 20 to 25 feet away, and he attempted to stop as soon as he saw it, but was unable to do so until the cars collided. He placed the point of impact in the pedestrian crosswalk (the crosswalk has little, if any, significance to the issues here involved) where an X is marked on the exhibit; and stated that neither car went over about a foot after the collision.

The other appellant, Savage, testified he was proceeding through the passageway, and was "easing out" onto E. Church Street intending to proceed west thereon. As he eased out, White came through the stop sign without stopping and ran into his car. He placed the point of impact slightly east of where White had placed it, as is shown by the heavy lines indicating the cars on the exhibit. It is obvious that the collision occurred within the intersection of the passageway and E. Church Street, Code (1957), Article 66½, Section 2 (20), according to both appellants.

Code (1957), Article 66½, Section 233 (b), provides: "The driver of a vehicle shall likewise come to a full stop in obedience to a stop sign and yield the right of way to a vehicle approaching on the intersecting highway as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway." See also Section 242, *infra*.

### The Case Against Appellant Savage.

Savage made a motion for a directed verdict in his favor, but the court denied the motion and submitted his case to the jury. It was noted above that White admitted he did not stop at the stop sign; and it is obvious, from uncontroverted evidence, that he failed to yield the right of way. The duties and obligations placed upon the driver of a vehicle under subsections (a) and (b) of Section 233 are so similar that we think our decisions under subsection (a), the so-called "boulevard law" are apposite here.

Of course, the statutes do not relieve the favored driver of all duty to use care. *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174; *State v. Marvil Package Co.,* 202 Md. 592; *Harper v. Higgs,* 225 Md. 24; *Green v. Zile,* 225 Md. 339; *Brown v. Ellis,* 236 Md. 487. The only purported act of negligence on Savage's part was that he was "cutting the corner," that is he was close to the curb on the Texaco property as he approached E. Church Street; and appellee and White argue this act of negligence was a contributing cause of the accident. We do not find the argument persuasive. We stated in *Dunnill v. Bloomberg,* 228 Md. 230, that although the duty of the unfavored driver

is not absolute, it is rigorous and only in rare instances is it proper to submit to the jury the issue of negligence or contributory negligence on the part of the favored driver. Again, in *Zeamer v. Reeves,* 225 Md. 526, Judge Sybert, for the Court, stated: "The unfavored driver may not relieve herself of the duty of yielding the right of way by simply claiming that the favored driver was exceeding the speed limit." In *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, the favored driver was charged with three alleged acts of negligence. In disposing of one of them, the Court said: "However, even if it is a fact that he [the favored driver] was driving in the center of the avenue, he could not be charged with negligence for so doing, because such fact was not the direct and proximate cause of the accident, as there might have been a collision even if the cab had been traveling upon the right half of the avenue." Moreover, there was testimony to the effect that because of the bend in the passageway and its width (it will be noted the width varies from 19.5 feet at the middle of the curve to 30 feet where it enters E. Main Street and to some 18 feet as it gets close to E. Church Street; and the whole passageway is but some 40 feet long), there was not room for two cars to pass at all points therein, although cars used it regularly for traffic going both ways. The general rule that a motor vehicle should keep to the right of the center of a road does not apply where the width of the road is too narrow for the rule to be observed. Code (1957), Article 66½, Section 217 (a) ; *Longenecker v. Zanghi,* 175 Md. 307. In the case at bar, we think that White's admitted failure to stop at the stop sign and his admitted failure to yield the right of way were the direct and proximate causes of the collision. Had he stopped in obedience to the duty placed upon him by the statute, and then proceeded slowly so as to be able to yield the right of way, the other duty placed upon him by the statute, he, undoubtedly, would have seen the Savage car in time to have averted the collision, whether the Savage car was close to the curb or not. Under these circumstances, even if we assume Savage was close to the curb as he proceeded through the passageway, we do not believe that that fact was a proximate cause of the accident. The trial court, therefore, should have granted his motion for a directed verdict.

*The Case Against White.*

What we have said above comes close to disposing of White's contentions; however there are several aspects of the case, from his point of view, that should be considered. He claims that the stop sign on the south side of E. Church Street is to control traffic which enters E. Main Street at the intersection of the two streets at the point of the painted "triangle" some 100 to 110 feet east of the stop sign, where a painted yellow line (visible in spots) is the signal (he says) at which he was required to stop. We were referred to no statute, and we have found none, defining the significance of the faint yellow line; nor was the manual of "Traffic Control Devices" authorized by Code (1957), Article 66½, Section 189 offered in evidence or was the court requested to take judicial notice thereof. *Belle Isle Cab v. Trammell,* 227 Md. 438.

We have examined the "Manual of Traffic Control Devices" (1955) issued by the State Roads Commission, and we have found nothing to sustain White's version of the meaning of the traffic control devices involved in the case at bar. Compare pp. 26, 41, 124 and 155.

We have the positive injunction of Sections 233 (b) and 242 with reference to stop signs and drivers at stop intersections. Section 242 (b), in part, provides: "Every stop sign shall be located as near as practical at the property line of the highway [which means as near as practical to the edge of the highway] *at the entrance to which the full stop must be made,* or at the nearest line of the crosswalk thereat, or, if none, at the nearest line of the [intersecting] roadway." (Italics added.) And Section 242 (c) requires every driver approaching a stop sign to come to a full stop at the sign or at a clearly marked stop line "before entering [the] intersection" and to yield the right of way to vehicles approaching on the intersecting highway, except when controlled by peace officers or traffic-control signals. In *Belle Isle Cab v. Trammell, supra,* we stated that the specifications of the Manual of Traffic Control Devices required a stop sign to be erected not closer than six nor more than fifty feet from where the driver had to stop, and held that a stop sign

erected some 102 feet from an intersection was too far away to control the intersection. Without repeating the physical layout of the scene of the accident, as it is disclosed by the exhibit, we are impelled to conclude that White was mistaken in his belief that the stop sign controlled the intersection of E. Church and E. Main Streets, but did not control the intersection of the passageway with E. Church Street. And, as stated above, it was his failure to stop and yield the right of way to Savage that was the proximate cause of the collision.

White also makes a contention that there was testimony to the effect that an arrow was painted on the passageway at its entrance from E. Church Street indicating that the passageway was for use by traffic turning to the right off E. Church Street only. There are several answers to the contention, but the quick and short one is that Chief Chatham, who testified concerning the arrow (more than two years after the accident), said that he did not know whether it was there at the time of the accident or not, but the passageway was regularly used by traffic in both directions.

White makes a further claim that the court erred in excluding an admission by appellee's decedent. The admission was made to the appellee in which the decedent "evidenced the opinion that the accident was not the fault of White." We shall assume, without deciding, that the objection to the admission should have been overruled. *McCormick, Evidence* § 241. However, this did not constitute reversible error, for the above admission of the decedent, if admitted into evidence, would not have been sufficient to require the question of White's primary negligence to have been submitted to the jury in view of White's own testimony to the effect that he did not stop at the stop sign and he failed to yield the right of way.

Finally, White complains about several portions of the court's charge to the jury; none of them, however, related to the question of damages. The question of his primary negligence was submitted to the jury and it found him guilty of negligence. Surely he has no cause for complaining of the court's charge (other than on the question of damages), for, as shown above,

he was clearly guilty of negligence as a matter of law by his own testimony (as well as all of the other evidence).

> *Judgment against Savage reversed without a new trial; judgment against White affirmed; costs to be paid ½ by White and ½ by appellee.*