TRIONFO, et al. *v.* R. J. HELLMAN, INC.

[No. 201, September Term, 1967.]

■■■■■■■■■

■■■■■■■■■
■■■■■■   ■■■■

■■■■■■■■■
■■■■■■■■■  ■■
■■■■

*Decided May 10, 1968.*

■■■■■■■■■
■■■■■■■■■

■■■■■

The cause was argued before HAMMOND, C. J., and HOR-
NEY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Alan Edgar Harris* for appellants.

*George D. Solter* for appellee.

FINAN, J., delivered the opinion of the Court.

The appeal in this Boulevard Law case is taken from a judg-
ment upon directed verdict in favor of the defendant given at
the conclusion of all the evidence.

The accident occurred at the intersection of Perring Park-
way, the favored boulevard, and the eastbound exit ramp of
the Baltimore Beltway. The Parkway is a dual highway, with
two lanes in each direction and a speed limit of 50 miles per
hour. The southbound slow lane is 14 feet wide, the fast lane 13
feet wide. Opposite the intersection of the exit ramp there is a
sixty foot opening in the Parkway median to permit traffic so
desiring to turn into the northbound lanes of the Parkway. The

distance between the southbound and northbound lanes is 16 feet. The Beltway bridge over the Parkway is between 700 and 800 feet north of the intersection, and beyond that the Parkway terminates at Joppa Road, approximately 2,000 feet north of the intersection.

According to the testimony of the plaintiff-appellant, Mary E. Trionfo, at approximately 1:00 P.M. on June 25, 1965, she proceeded off of the Beltway onto the exit ramp and stopped at the stop sign on Perring Parkway. She looked right and left, but could not proceed because an employee of the State Roads Commission had stopped a black Ford in the southbound fast lane of the Parkway at the opening in the median. The employee then permitted the Ford to make its left turn into the median, during which time Mrs. Trionfo again checked traffic and, seeing nothing southbound from Joppa Road, drove across the southbound lanes. She was immediately forced to stop because the black Ford was again stopped in the median by the State Roads Commission employee. At this time, Mrs. Trionfo's car blocked both southbound lanes, and she observed the defendant's truck proceeding in the fast, or inside, southbound lane, but beyond the Beltway bridge. The Ford then cleared the intersection and Mrs. Trionfo moved up, but was unable to proceed because of approaching northbound traffic. Her car, which was over 17 feet in length, protruded more than one foot into the fast southbound lane. She claims that the defendant's truck continued toward her in the fast southbound lane, then veered toward the right curb and hit the left rear of her car. She also testified that the defendant's driver, Robinson, told her after the accident that he did see her, but that his brakes were bad and that he kept telling his boss about it.

The defendant's employee, Robinson, gave quite a different account of the accident. He testified that as he was proceeding southbound in the *right* or slow lane of traffic, he observed the plaintiff's car following another down the exit ramp. When he was about three truck lengths from the intersection, both cars proceeded across the southbound lanes, but the lead car was forced to stop in the median for northbound traffic, thereby trapping the Trionfo car in the fast lane and part of the slow lane. Robinson then applied his brakes and swerved toward the right,

his right front tire hit the curb and the truck then bounced off, struck the rear of Mrs. Trionfo's car and immediately came to a stop. Robinson admitted that his brakes were unreliable and that this fact had been conveyed to Mr. Hellman, his employer. However, Mr. Hellman testified that the brakes were in good condition at the time of the accident since they had been repaired and tightened two weeks earlier.

The appellee introduced as further evidence the testimony of one of its employees, Hannibal, who was driving his truck north on the Parkway and observed the accident from about one hundred yards away. According to Hannibal, the appellee's truck was proceeding southbound in the slow, or right, lane. He further stated on direct examination that he saw Mrs. Trionfo approach Perring Parkway and stop before crossing over the southbound lanes. However, on cross-examination, the appellants' attorney introduced prior statements of the witness Hannibal that when he first observed the Trionfo car, it was already across the southbound lanes and was stopped in the median by northbound traffic.

The defendant's motion for directed verdict was based on the dual grounds that there was no primary negligence on the part of the defendant and that the plaintiff, as a matter of law, was guilty of negligence. The court instructed the jury as follows:

> "* * * I now instruct you that the evidence in this case conclusively establishes, as a matter of law, that the proximate cause of the accident in question was the failure of the plaintiff to yield the right of way to the defendant's vehicle which was proceeding on Perring Parkway which is a boulevard street in Baltimore County. You are further instructed that there is no evidence in this case of any negligence on the part of the defendant which proximately caused the accident."

From the judgment on the directed verdict in favor of the defendant the plaintiffs took this appeal. We must therefore resolve all conflicts in the evidence in favor of the party against whom the verdict was directed and assume the truth of all evidence and all inferences which may reasonably be deduced from the evidence supporting the appellants' contention. *Brown v.*

16

*Ellis,* 236 Md. 487, 491, 204 A. 2d 526 (1964); *Brooks v. Childress,* 198 Md. 1, 4, 81 A. 2d 47 (1951).

The facts of the instant case are close to those of *Racine v. Wheeler,* 245 Md. 139, 225 A. 2d 444 (1967). In *Racine* the defendant being the unfavored driver emerged from a secondary road controlled by a stop sign and crossed the eastbound lanes of U.S. Route 40, pulling into the 26 foot median crossover to await the opportunity to turn left onto the westbound lanes of Route 40. The plaintiff's vehicle extended into the fast eastbound lane a distance of 2 to 12 inches and there was evidence that it had remained in that position for some 25 to 30 seconds prior to the collision. The plaintiff, the operator of the favored vehicle travelling on the eastbound lane, struck the defendant's car. The plaintiff in his version of the accident claimed that the defendant had crossed the highway immediately in front of him prior to the impact. The lower court in *Racine,* although aware of the implications of the Boulevard Rule, instructed the jury as follows:

> "However, if you find that the defendant stopped her vehicle in the crossover, but in such a position that the rear of her automobile extended into the travelled portion of Route 40, and that the prior movement of her automobile was not a producing cause of the accident, then there was a duty imposed on the plaintiff to keep a reasonable lookout and to exercise reasonable and ordinary care and caution for his own safety. And if you further find that the plaintiff saw, or by the exercise of ordinary care, should have seen the rear of the defendant's vehicle projecting into his lane of traffic, and that the plaintiff failed to move from his path, when in the exercise of reasonable care he had the opportunity to do so, if the jury so finds, and he failed to do so, thereby striking the defendant's automobile, then you should find the plaintiff guilty of negligence directly contributing to the happening of the accident, and your verdict should be for the defendant."

This Court in *Racine,* in an opinion written by Judge McWilliams, affirmed the action of the lower court in allowing the

case to go to the jury on the above quoted instructions. Applying the rationale of *Racine* to the case at bar it may be argued that the questions of the primary negligence of the favored driver, as well as the contributory negligence of the unfavored driver, were properly questions to be determined by the jury. However, there is one significant distinction between *Racine* and the instant case.

In *Racine* the conduct of the unfavored driver did not as a matter of law constitute contributory negligence, whereas in the case at bar we think it did. In *Racine,* before the unfavored driver left the secondary highway to cross the eastbound lane of Route 40, the 26 foot median crossover was clear of traffic. In the instant case, at the time the plaintiff (the unfavored driver) made her move from the stop sign at the exit ramp, with the intent to cross the southbound lanes of Perring Parkway, the 16 foot median crossover was not clear of traffic. In fact, accepting the plaintiff's own version of the incident, the Ford vehicle which she was watching had been stopped by the State Roads Commission employee in the fast southbound lane at the crossover and the plaintiff made her move to cross the southbound lanes while the Ford was moving into the crossover on further signal from the State Roads' employee. The Ford obviously had not cleared the median crossover when the plaintiff began her move. In fact, because the Ford was again stopped by the State Roads' employee the plaintiff was never able to move into the crossover, or at least far enough into it to clear both southbound lanes. We do not think that, as a matter of law, the unfavored driver in this case fulfilled the twofold obligations imposed upon her by the Boulevard Rule to stop and yield. Code 1957 (1966 Repl. Vol.) Article 66½, § 233. She left the stop sign at the intersection of the eastbound exit ramp and moved across the southbound lanes of Perring Parkway towards the median crossover without any assurance that there would be room for her 17 foot 4 inch vehicle in the 16 foot wide crossover. To proceed across a favored highway without assurance, before starting, that your vehicle has an unobstructed way to clear it, is failure to yield.

In *Shedlock v. Marshall,* 186 Md. 218, 235, 46 A. 2d 349, 357 (1946), Chief Judge Marbury, speaking for the Court, re-

viewed the prior decisions and then current statutes pertaining to the Boulevard Rule and its development, stating:

> "What the statutes, as interpreted by these decisions, mean is that a driver who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls *must yield the right of way to all the traffic he finds there during the entire time he is there*. If he does not, and a collision results, he is at fault and cannot recover against the other driver unless the doctrine of last clear chance enters the case." (Emphasis supplied.)

*Shedlock,* has been relied upon by this Court in *Cooper v. Allen,* 243 Md. 9, 219 A. 2d 920 (1966); *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964); *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961); and *Green v. Zile,* 225 Md. 339, 170 A. 2d 753 (1961).

In *Harper v. Higgs, supra,* the unfavored driver while endeavoring to cross the boulevard stalled her car under the blinker light located in the center of the intersection and could not get it started; in this position of obvious peril she was struck by the favored driver. This Court held that under the facts of the case the question of negligence on the part of the favored driver was a matter for determination by the jury. However, it is readily distinguishable from the case at bar. In *Harper,* there was evidence that the favored driver was inattentive and there was testimony from which the jury could have found, "that if Mrs. Harper (the favored driver) had kept a proper lookout she would have seen the Hurry car (unfavored vehicle) in its position of obvious peril in time to have avoided it by stopping, or otherwise." In the instant case there was no evidence that the operator of the favored vehicle was inattentive. Furthermore, unlike *Harper,* where the operator of the unfavored vehicle stopped and yielded and had no knowledge that thereafter her passage would be impaired by a stalled motor, the operator of the unfavored vehicle in the instant case, Mrs. Trionfo, drove across the highway before she had any assurance there was room for her to clear it by entering the crossover. Her negligence was continuing from the time she left the stop sign at the exit ramp

until the moment of the collision. The doctrine of last clear chance was not applicable in this case. *Legum v. State,* 167 Md. 339, 355-356, 173 A. 565 (1934) ; Webb, *Bothersome Boulevards,* 26 Md. L. Rev. 111, 121 (1966).

Since, in the opinion of this Court the plaintiff was guilty of contributory negligence, it becomes unnecessary for us to consider whether there was any primary negligence on the part of the defendant, the favored driver ; nor was it necessary for the lower court to have considered that question, since it held that, as a matter of law, the conduct of the plaintiff was the sole and proximate cause of the accident.

*Judgment affirmed, with costs.*