## MARTHA OWENS ET VIR *v.* FRANK ALLEN CREASER

[No. 127, September Term, 1971.]

*Decided March 6, 1972.*

---

594

The cause was argued before MURPHY, C. J., and MORTON, ORTH, THOMPSON, MOYLAN, POWERS and GILBERT, JJ.

*Thomas P. Meehan,* with whom was *Michael K. Heaney* on the brief, for appellant.

*Laurence T. Scott* for appellee.

THOMPSON, J., delivered the opinion of the Court. MURPHY, C. J., and ORTH and GILBERT, JJ., dissent. Dissenting opinion by GILBERT, J., in which MURPHY, C. J., and ORTH, J., concur, at page 608 *infra*.

Martha Owens, the plaintiff/appellant, driving alone in a Montgomery County school bus, was involved in an accident with Frank Creaser, defendant/appellee. Creaser struck the bus as Mrs. Owens was turning left onto a favored highway from a stop sign controlled gravel road. The appellant sued for personal injuries and on appeal claims the trial court committed reversible error by granting the appellee's motion for directed verdict on the issue of contributory negligence. She also contends that the trial court abused its discretion in refusing to permit the investigating police officer to give certain expert opinions.

In determining the propriety of the motion for directed verdict we, as well as the trial judge, must consider the evidence together with all reasonable and legitimate inferences which may be deduced therefrom, in a light most favorable to the plaintiff. *Mazer v. Stedding*, 10 Md. App. 505, 271 A. 2d 381, Md. Rule 552. We narrate the evidence accordingly.

About 7:00 A.M. on March 9, 1970, a clear dry morning, the appellant was driving a Montgomery County school bus in an easterly direction on Stewartown Road, toward its intersection with Goshen Road. Stewartown Road is a gravel public road approximately 20 feet in width with one terminus at Goshen Road; the entrance to Goshen Road is controlled by a stop sign. Goshen is a two lane, blacktopped road with a paved width of approximately 20 feet, and it runs roughly north and south; its lanes at the intersection are divided by a double yellow line and the speed limit is posted at 40 miles per hour. Looking north along the upgrade of Goshen Road an observer at the intersection has a road visibility of not more than 200 feet. Visibility beyond is, by nature, physically impossible because of a curve and a hill. The

measured distance from the northernmost edge of Stewartown Road to the crest of the hill is 175 feet. An observer's visibility south from the intersection is unobstructed for almost 1000 feet. The stop sign on Stewartown Road is placed about 8 feet west of the edge of the paved surface of Goshen Road. A driver who halts his vehicle at the stop sign has a very limited view of traffic on Goshen because of a bank, large trees and bushes.

Appellant initially stopped at the sign, she then "creeped out" and stopped the second time at the westernmost edge of Goshen Road. Looking first to her right and then to her left and once more to her right, she saw no oncoming traffic, and while continuously looking to her left and still not seeing any traffic, she began to swing the school bus into a left turn. The bus was in second gear, proceeding at 5 miles an hour or less, with its front wheels approximately at the double yellow lines when the appellee's Cadillac "jumped over the hill." "[W]hen I looked up and saw the defendant's car he was rolling, I know at least 60 or more." She attempted to accelerate her 29 or 30 foot long bus in an attempt to clear the appellee's proper lane of traffic but the front end of the car struck the left front wheel of her bus. She testified that appellee was moving at 20 to 30 miles per hour at the time of impact. There was evidence that the force of the impact turned the front end of the bus around as though it had been making a right turn. Mrs. Owens testified that, ". . . the force of knocking me out of my seat, I know it had to be really great. Because I didn't just fall out of the seat, it threw me . . . out of the seat belt and out of the seat." She claims she was thrown headlong into the step-well and sustained injury.

Montgomery County police officer, Donald M. Crowley, testified that his investigation revealed that by standing on Goshen Road, where Stewartown intersects, he was able to see north a maximum of 200 feet. He placed impact at a point 18 inches to 2 feet north of a line extending the northernmost edge of Stewartown Road and 5 or 6 inches into the northbound traffic lane on Goshen.

Damage to the car was generally to the front but most heavily to the right front. The bus had its left front fender, bumper and wheel damaged. The officer testified that on Goshen Road, he measured 166 feet of ". . . deep dark burning (skid) marks. You could rub (them) and it would leave marks on your fingers." He explained that this recorded distance was computed by totaling the length of the skid marks left by each of the four automobile tires and dividing by 4. One hundred forty-five feet of the marks were in the southbound lane and then crossed into the northbound lane where they continued 17 feet to the point of impact and 4 feet beyond. The school bus came to rest 34 feet 11 inches to the south or southeast of the point of impact with its nose slightly off of the road.

There was testimony that the Cadillac automobile weighed 4,000 pounds; the weight of the school bus was not given.

Immediately prior to the accident, one Charles Frazier was parked in a driveway facing the west side of Goshen Road about 400 yards north of the crest of the hill. As he was preparing to drive out of the driveway, he observed appellee's car traveling south at "I would estimate between 60 and 65 miles per hour." He testified that from his experience he could estimate the speed of a car viewed from his position within about 5 miles per hour.

The appellee, Frank Creaser, called as a hostile witness, was not asked his speed immediately prior to the accident but testified that he was very familiar with Goshen Road, having driven it twice a day for 7 years. Of its intersection with Stewartown Road, he testified, "It is a place where you should be cautious . . . It is one where I am always cautious."

I

The threshold question simply stated is: is an unfavored driver/plaintiff always, as a matter of law, guilty of contributory negligence when involved in an accident

with a favored driver at or near a stop sign controlled intersection?[1]

In 1966, John W. T. Webb, Esq., writing in 26 Md. L. Rev., 111, made an exhaustive analysis of the Maryland cases and predicted that an unfavored driver would be held guilty of contributory negligence as a matter of law in all such situations.[2] The Courts have since continued to apply the rule most rigorously, *Cornias v. Bradley,* 254 Md. 479, 255 A. 2d 431, *Oddis v. Greene,* 11 Md. App. 153, 273 A. 2d 232; in fact there is little doubt that Maryland applies the boulevard rule more strongly than most other jurisdictions. 3 A.L.R.3d 180, 236, 281. *Brown v. Ellis,* 236 Md. 487, 495, 204 A. 2d 526, 529.

We are required to apply the law as interpreted by the Court of Appeals. Neither we, nor the Court of Appeals have, until now, faced a factual situation where it was possible, indeed probable, for a finder of facts rationally to conclude, that due to the physical facts, the unfavored driver was not negligent.

In *Cooper v. Allen,* 243 Md. 9, 219 A. 2d 920, the Court found the unfavored driver guilty of contributory negligence as a matter of law because "he did not yield the right of way" to a motor vehicle which has been stopped at a stop light some 150 feet distant, operated by an alcoholically stimulated driver, who speeded forward paying no attention to the unfavored driver and crashed into him. It must be noted that in *Cooper* the issue was whether or not the unfavored driver yielded within the meaning of the statute; there was no evidence that the unfavored driver kept a lookout while proceeding through the intersection nor attempted any evasive action. Thus, the unfavored driver violated his duty to keep a continuous watch for traffic as required by *Fowler v. De-Fontes,* 211 Md. 568, 128 A. 2d 395.

---

1. Md. Code, § 233 (a) and (b) and § 242—Effective Jan. 1, 1971, Art. 66½, § 11-403 applies.

2. Mr. Webb argued that the policy of the law to expedite traffic could sufficiently and more justly be served by a rule creating a presumption that the unfavored driver was negligent.

The Court in *Cornias v. Bradley, supra,* applied the boulevard rule to a complicated intersection with many lanes of traffic and 8 traffic lights. There was positive evidence the unfavored driver did not keep a lookout for traffic and of course, consequently failed in his duty to yield to traffic on the favored highway.

In *Oddis v. Greene, supra,* the unfavored bicycle rider could have, had he looked, seen the favored vehicle in time to avoid the collision. In *Bayless v. Federal Mutual Insurance Co.,* 13 Md. App. 166, 282 A. 2d 531, it was obvious the unfavored driver could have seen the approaching traffic had she been dutifully attentive.

The cases relied upon by the appellee are readily distinguishable. *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570, presents a somewhat similar factual situation to the instant case except that: (1) although the nearest crest of a hill was 225 feet from the intersection, a second hill beyond the first, was visible from the intersection, the Court said the unfavored driver was guilty of negligence in ". . . not yielding the right of way when Mrs. Shriner's car was evidently in the depression between the two hills. If he had waited a few moments longer to give an approaching vehicle the time to clear that depression, the accident here would not have happened.", and (2) there was no evidence that the favored driver was speeding. In holding an unfavored driver guilty of contributory negligence, even though the favored driver was engaging in a speed contest, the Court in *State v. Gosnell,* 197 Md. 381, 79 A. 2d 530, said at 535, "If the defendants were racing, and [the unfavored driver] saw them, or by the exercise of reasonable care and caution could have seen them in time to prevent the accident as he proceeded across the highway, but did not do so, and the collision resulted, [the unfavored driver] was guilty of contributory negligence as a matter of law." [3] The Court

3. It has been ofttimes stated, most recently in *Lord v. Pennsylvania R. R.,* 251 Md. 113, 246 A. 2d 231, (1968), that the boulevard rule is the application by statute to roadway intersections of the old stop, look and listen rule with respect to railways. Succinctly

found that (1), since there was no other traffic on the favored highway and the headlights of the racing cars were burning as they rounded the curve over 1000 feet from the intersection, there was no reason why the unfavored driver could not have seen the favored driver approaching in time to yield the right of way; and (2), there was no evidence the unfavored driver continued to look after he left the stop sign and began to cross the dual highway.

In *Thompson v. Terry*, 245 Md. 480, 226 A. 2d 540, *Sun Cab Company v. Cusick*, 209 Md. 354, 121 A. 2d 188, and *Sun Cab Co. v. Faulkner*, 163 Md. 477, 163 A. 194, there was no evidence the unfavored driver made any attempt to yield to favored traffic.

Since the instant fact situation is extremely unusual, it is well to distinguish a few other cases which to the casual observer, might seem to be directly in point. *Brown v. Ellis, supra,* held an unfavored driver guilty of negligence as a matter of law where, after stopping and seeing no traffic, he entered the intersection and "glanced" for traffic on the favored highway when he was three quarters of the way across. The court said at 236 Md. 488, 204 A. 2d 529, "he should look observantly and with effect for traffic upon the favored highway, and a 'glance' will not suffice." In *Savage v. Mills*, 237 Md. 204, 205 A. 2d 239, the unfavored driver failed to stop or to observe. A more difficult case to distinguish is *Dunnill v. Bloomberg*, 228 Md. 230, 179 A. 2d 371, where parked cars blocked the view of the unfavored driver. There the Court held the favored driver/plaintiff was entitled to an instruction that the unfavored driver was negligent and that he was free of contributory negligence. The Court said in 228 Md. at page 235, 179 A. 2d at page 374, "The

---

stated this principle is ". . . if a party neglect these necessary precautions, and receives injury by collision with a passing train, which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed, by his own negligence, to the occurrence of the accident; and unless such presumption be repelled, he will not be entitled ·to recover for any injury he may have sustained." *P. W. & B. R. R. Co. v. Hogeland,* 66 Md. 149, 7 A 105.

fact that the defendant's view was obstructed by parked cars does not excuse him; on the contrary, it required the exercise of particular caution." There was testimony from which the Court inferred that he did nothing to yield the right of way. After reviewing the evidence the Court said, "We take this to mean that he did not see him [the unfavored driver] until just before the accident." In the instant case there was ample evidence from which the jury could find that the unfavored driver kept a diligent lookout and did all she possibly could to yield the right of way.

In *Green v. Zile*, 225 Md. 339, 170 A. 2d 753, the unfavored driver observed no traffic while stopped but did not look again until his truck completely blocked traffic in both lanes of the favored boulevard. In the present case, appellant continued to observe and with effect because she saw appellee the instant he "jumped over the hill."

A few cases decided by the Court of Appeals since 1966 are of particular interest in solving the problem before us. In *Racine v. Wheeler*, 245 Md. 139, 225 A. 2d 444, a jury was permitted to find that the plaintiff, the favored driver, was guilty of contributory negligence even though the accident occurred in the intersection where the unfavored driver had been stopped at a median strip, but extended a few inches into the fast lane of traffic. The Court pointed out the favored driver had a clear view for 600 feet and his speed of 35 to 40 miles per hour was at the rate of 51.1 to 58.4 feet per second and approved an instruction which permitted a finding that the "prior movement of her [the unfavored driver's] automobile was not a producing cause of the accident." [4] The Court's

4. Although the Court has repeatedly said it would not indulge in nice calculations of time and speed in the application of the boulevard rule, *Brooks v. Childress*, 198 Md. 1, 81 A. 2d 47, *Dunnill v. Bloomberg*, 228 Md. 230, 179 A. 2d 371, *Greenfeld v. Hook*, 177 Md. 116, 8 A. 2d 888, the instant case requires no more calculation than the Court applied in *Racine*. A car traveling at 60-65 miles per hour or 88 feet or more per second would travel 200 feet in less than 2-½ seconds. Such velocity would afford appellant little time to engage in evasive action, even when we consider that appellee braked heavily.

comment about *Racine* in *Trionfo v. R. J. Hellman, Inc.*, 250 Md. 12, 16, 241 A. 2d 554, 557 is even more interesting:

> "This Court in *Racine*, in an opinion written by Judge McWilliams, affirmed the action of the lower court in allowing the case to go to the jury on the above quoted instructions. Applying the rationale of *Racine* to the case at bar it may be argued that the questions of the primary negligence of the favored driver, as well as the contributory negligence of the unfavored driver, were properly questions to be determined by the jury. However, there is one significant distinction between *Racine* and the instant case.

> "In *Racine* the conduct of the unfavored driver did not as a matter of law constitute contributory negligence, whereas in the case at bar we think it did. In *Racine*, before the unfavored driver left the secondary highway to cross the eastbound lane of Route 40, the 26 foot median crossover was clear of traffic. In the instant case, at the time the plaintiff (the unfavored driver) made her move from the stop sign at the exit ramp, with the intent to cross the southbound lanes of Perring Parkway, the 16 foot median crossover was not clear of traffic."

Also of particular interest is the decision in *Nicholson v. Page*, 255 Md. 659, 259 A. 2d 319, where the unfavored driver was permitted to recover from the favored driver and the boulevard rule was held not to be applicable. Judge Barnes said:

> "In the present case, the plaintiff did stop as required by law before entering Carey Street. He looked to his left and saw that northbound traffic was at a standstill in the northbound lane and would necessarily remain standing un-

til the bus, as the first stopped vehicle occupying substantially all of the northbound traffic lane, moved forward. The bus driver waved the plaintiff on to cross the northbound lane thereby reasonably indicating to the plaintiff that the bus would not move forward, as, indeed, it did not. Having then substantially crossed the northbound lane of Carey Street, the plaintiff properly looked to his right to see whether or not there was any southbound traffic to which he was required to yield the right-of-way. Seeing no such southbound traffic (and there was none), he then proceeded to cross the southbound lane of Carey Street. In our opinion, it was not foreseeable by the plaintiff that the defendant would drive his automobile from the standing position in the northbound lane of Carey Street, 15 feet behind the bus, cross into the southbound lane, contrary to the statutory requirement, and attempt to make a left-hand turn, contrary to the statutory requirement, into Ward Street. This unforeseeable and negligent act by the defendant was, as we have already indicated, the proximate cause of the collision and not the lawful passage of the plaintiff's vehicle across Carey Street." (255 Md. at 666, 259 A. 2d at 324.)

As is apparent from the above quoted passage, even where there is a clear violation of a statutory command or duty, there is no negligence as a matter of law unless such violation was the proximate cause of the injury. *Quinn Freight Lines, Inc. v. Woods,* No. 116, September Term, 1971, filed November 11, 1971. Also see *Kelly v. Huber Baking Co.,* 145 Md. 321, 334, 125 A. 782. Negligence is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances. *Kasten Construction Co. v. Evans,* 260 Md. 536, 273 A. 2d 90.

It is clear that the rule to be applied in determining whether the facts justify a holding that the plaintiff was guilty of contributory negligence as a matter of law is that the act so relied on must be distinct, prominent and decisive, and one about which reasonable minds would not differ in declaring to be negligent. *Miller v. Mullenix,* 227 Md. 229, 176 A. 2d 203, 204. In the case at bar we do not find in the evidence presented to the trial court such a prominent and decisive act, susceptible of but a single interpretation; consequently, we hold the boulevard rule cannot apply as a matter of law to the instant case and plaintiff/appellant is entitled to have a jury assay the quality of her conduct in light of the duties that were imposed upon her. As the Court of Appeals said in *Ness v. Males,* 201 Md. 235, 240, 93 A. 2d 541, 544, "The obligation to yield the right of way could hardly demand that [she] remain there permanently or enter at [her] peril."

## II

The next question is: could the negligence of the favored driver, the appellee/defendant, be found to be the proximate cause of the accident?

In analyzing the earlier Maryland cases, Mr. Webb in 26 Md. L. Rev., supra, 123-124, recognized that the Court had permitted the submission to a jury of the question of negligence on the part of the favored driver in rare situations; he reiterated the Court of Appeals holdings that in boulevard situations, mere excessive speed, without more, would not ordinarily be held to be negligence proximately causing an accident. Again it is interesting to review a subsequent case. In *Pinchbeck v. Baltimore Tank Lines, Inc.,* 258 Md. 211, 265 A. 2d 238, the Court ruled as a matter of law that a favored driver/plaintiff was guilty of contributory negligence because of high speed and his failure to observe what he should have seen, saying:

> ". . . [His] progress was 'in the vicinity of 80 miles per hour.' He exceeded the posted limit

of 60 miles per hour; he ignored the signs commanding a reduction in speed; he grossly exceeded the 45 mile limit. He admitted, although he does not remember, that he 'must have seen the truck.' However, his admission has little significance since he would not in any event be heard to deny it. The truck was huge; it was moving; it showed a number of lights; the reflectors on the rear bumper were quite large. It was further illuminated by the 'well-lit' Sunnybrook Tavern and as well by the lights of Wallace's pick-up truck which shone upon it during its traverse of the southbound lane. There was nothing in the northbound lane of the highway between Old Fort Road and the intersection to obscure his vision." 258 Md. at 216, 265 A. 2d at 241.

In the instant case there was evidence the favored driver was exceeding the speed limit by at least 50%. He admitted he was familiar with the dangerous intersection. The appellant's sight distance was such that she could enter the intersection only with a substantial risk of collision with any vehicle suddenly appearing from the north at a speed significantly in excess of the 40 miles per hour posted speed limit. Her conduct must be judged by what she did after she entered the intersection. If she were not negligent thereafter a jury should be permitted to find that the appellee's excessive speed was the sole proximate cause of the accident.

### III

A police officer with 3½ years of experience, two of which were devoted exclusively to investigation of automobile accidents, testified he had investigated three or four hundred accidents involving the location of debris, skid marks and damage to vehicles. He had formed opinions as to how these accidents had occurred and had verified his opinions through subsequent interrogations of

witnesses. With these qualifications, appellant contends the witness should have been permitted to answer the following questions:

(1) Assuming the accuracy of the witnesses' testimony that the defendant was traveling at 60 miles per hour when he came over the hill, does he have an opinion as to whether or not that vehicle would have been visible to the plaintiff at the time she entered the intersection?

(2) Assuming the plaintiff's vehicle was traveling at a maximum of five miles per hour does he have an opinion as to the speed of the defendant's vehicle at the point of impact?

(3) Does he have an opinion as to the maximum and minimum rates of speed the defendant lost in incurring 162 feet of skid marks?

In sustaining objections to these questions the trial judge commented, "It is not an expert question. He did not see the accident, so he cannot tell how it happened. That is the substance of my ruling." Appellant contends the comment shows a clear abuse of discretion on the part of the trial judge. While the argument seems to have surface validity, we can find no abuse of discretion on the record before us.

The decision to admit or reject expert testimony is peculiarly within the discretion of the trial judge. *Christ v. Wempe,* 219 Md. 627, 150 A. 2d 918; *Nizer v. Phelps,* 252 Md. 185, 249 A. 2d 112. As to the first question a trial judge might well have concluded the jurors did not need expert testimony on the point, *Christ v. Wempe, supra.* As to the second and third questions, it appears that the officer was not specifically questioned as to his expertise in estimating speeds from his investigation of the physical facts following accidents. The trial judge also has discretion to determine whether or not a witness is sufficiently qualified to express an expert opinion on the point in question. *Spence v. Wiles,* 255 Md. 98, 257 A. 2d 164. If no additional testimony is presented at

a second trial we see no abuse of discretion if the trial judge should reject the proffered evidence.

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Appellee to pay the costs.*

GILBERT, J., dissenting:

I dissent from the ruling of the majority because, in my opinion, they have misconstrued the law of Maryland in regard to the Boulevard Rule and seek to carve out an exception under a factual situation where I think no exception exists. The Maryland law in effect at the time of the accident in the instant case provided:

> "§ 233. Vehicle entering through highway or stop intersection.
>
> (a) *In general.*—The driver of a vehicle shall come to a full stop as required by this article at the entrance to a through highway and shall yield the right of way to other vehicles approaching on said through highway.
>
> (b) *Stopping in obedience to stop sign.*—The driver of a vehicle shall likewise come to a full stop in obedience to a stop sign and yield the right of way to a vehicle approaching on the intersecting highway as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway. (Ann. Code, 1951, § 198; 1943, ch. 1007, § 178; 1945, ch. 506, § 178 (b).)"

That section required compliance with two dictates: (1) that the unfavored driver bring his vehicle to a complete stop, and (2) that the unfavored driver yield the right of way to all oncoming traffic. *Oddis v. Greene,* 11 Md. App. 153, 273 A. 2d 232 (1971).

While it is true that in *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939), the Court of Appeals stated that

there are "many situations in which the driver of an automobile entering a favored from an unfavored highway may without negligence be endangered by traffic over and along the same," they have, nevertheless, continued to apply the Rule almost without exception. See *inter alia: Carlin v. Worthington,* 172 Md. 505, 192 A. 356 (1937); *Pegelow v. Johnson,* 177 Md. 345, 9 A. 2d 645 (1939); *Madge v. Fabrizio,* 179 Md. 517, 20 A. 2d 172 (1941); *Rinehart v. Risling,* 180 Md. 668, 26 A. 2d 411 (1942); *Brooks v. Childress,* 198 Md. 1, 81 A. 2d 47 (1951); *Fowler v. DeFontes,* 211 Md. 568, 128 A. 2d 395 (1957); *McDonald v. Wolfe,* 226 Md. 198, 172 A. 2d 481 (1961); *Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371 (1962); *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964); *Savage v. Mills, Admr'x,* 237 Md. 204, 205 A. 2d 239 (1964); *Thompson v. Terry,* 245 Md. 480, 226 A. 2d 540 (1967); *Trionfo v. Hellman,* 250 Md. 12, 241 A. 2d 554 (1960). Cf. *Ness v. Males,* 201 Md. 235, 93 A. 2d 541 (1953); *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961); *Nicholson v. Page,* 255 Md. 659, 259 A. 2d 319 (1969).

This Court has followed the Court of Appeals in *Oddis v. Greene, supra; Kowalewski v. Carter,* 11 Md. App. 182, 273 A. 2d 212 (1971); *Bayliss v. Federal Mutual Insurance Co.,* 13 Md. App. 166, 282 A. 2d 531 (1971); *Quinn Freight Lines, Inc. v. Woods,* 13 Md. App. 346, 283 A. 2d 624 (1971); *Roberts v. Fairchild,* 14 Md. App. 612; *Sun Cab Co., Inc. v. Carter,* 14 Md. App. 395.

The majority seem to me to place strong reliance on the appellant's inability to see an approaching vehicle and her continuous looking toward her left as she attempted to move her vehicle across the intersection. It has been held that the unfavored motorist's inability to see oncoming traffic is all the more reason to be extra careful.

In *Dunnill v. Bloomberg, supra,* the Court of Appeals stated flatly:

"The fact that the defendant's view was ob-

structed by parked cars does not excuse him; on the contrary, it required the exercise of particular caution. See *Blinder v. Monaghan,* 171 Md. 77, 83, 188 A. 31. Nor does the fact that the favored driver was (as we must assume) exceeding the speed limit somewhat of itself constitute negligence or excuse the defendant's negligence."

In *Blinder v. Monaghan, supra,* the Court of Appeals held that where a cab driver's vision was obstructed by a bus on the favored street that such obstruction did not remove the case from the Boulevard Law. I would apply the rationale of *Dunnill* and *Blinder.*

The ruling of the majority in this case erodes the Boulevard Rule and creates the defense that the unfavored driver could not see approaching traffic. Such a ruling requires the favored driver to know of obstacles at the intersection with an unfavored road and to take such precautions as may be requisite under the circumstances. Under the majority opinion, the favored driver no longer has the right to anticipate that an unfavored driver will not enter an intersection and deprive the favored driver of his right of way. The favored driver is now placed in the untenable position of having to be gifted with clairvoyance and extra-sensory perception in order to determine that the vision of the unfavored driver is not going to be hindered by hills, curves, walls, trees or other obstructions. In short, the majority render the Boulevard Law meaningless in its application to intersections where the unfavored driver's vision is obscured.

I think that when a driver of a large vehicle, such as here present, pulls the same onto a favored highway when he is unable to ascertain that he may enter and clear the intersection safely and he is struck, he is guilty of contributory negligence as a matter of law. The legislature was certainly aware of the Boulevard Law when Article 66½, § 233 was repealed by Chapter 534 of the Acts of 1970 and recodified as Article 66½, § 11-403, and

had they decided to change it they could have done so at that time.

It is to be noted that the Boulevard Law (§ 233) provided that the unfavored driver *"shall* come to a full stop" and *"shall* yield the right of way to other vehicles approaching on said through highway." Nowhere does it say that the rule shall apply except to the operator of an empty school bus on the way to work; nowhere does it say that the rule shall apply except where visibility is limited; nowhere does it say that the rule shall apply except where the unfavored driver's vehicle is ponderous; nowhere does it say that the rule shall apply except where the favored driver is speeding, and nowhere does it say that the rule shall apply unless the unfavored driver continues to look for other traffic. In *Sun Cab Co., Inc. v. Carter, supra,* this Court said:

> "As the Boulevard Rules was applicable * * * the unfavored driver had an absolute duty to stop and an absolute duty to yield the right of way."

I think it impossible to reconcile the quoted language with the majority opinion.

If the Boulevard Rule is to be changed from the clear meaning set forth in the Statute, then it is, in my opinion, for the legislature to make the change and not this Court. I would affirm the judgment of the lower court.

I am authorized to say that Chief Judge Murphy and Judge Orth concur in the opinions expressed herein.